Steven R. Banks
Adriene L. Holder
Karen Cacace
Richard E. Blum
Hollis V. Pfitsch
THE LEGAL AID SOCIETY
Employment Law Unit
199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3648 (phone)
*Attorneys for Plaintiffs*

Adam S. Hakki
John A. Nathanson
Darren K. Ishmael
Mojoyin Onijala
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069
(212) 848-4000 (phone)
*Of Counsel*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Gil Santiago Cano, Hector Hernandez Zavala, Juan Hernandez Zavala, Omar Hernandez Zavala, Aristeo Basurto, Carlos Rodriguez Herrera, Leonardo Juarez, Saul Isidro, Aboubacar Gouem, and Anatole Yameogo on behalf of themselves and all others similarly situated,<br><br>                                        Plaintiffs,<br><br>                    -against-<br><br>DPNY, Inc. d/b/a Domino's Pizza, BMW Pizza, Inc. d/b/a Domino's Pizza, David L. Melton, Angelina M. Melton, Zia Shah, Shaik Shamin, Mohammed Patwary, and Mohammed Mannaf, a/k/a Mukter,<br><br>                                        Defendants. | **No.  10 Civ. 7100 (ALC) (JCF)**<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

# TABLE OF CONTENTS

ARGUMENT .................................................................................................................. 3

I.  Domino's Fails to Demonstrate that the Proposed amendments to the Complaint
    Would Be Futile .................................................................................................... 3

    A.  Factual disputes are irrelevant to the motion at issue and the submissions and
    judicial fact finding on Domino's' control of its franchises support
    Plaintiffs' motion ............................................................................................ 3

    B. Domino's ignores or misconstrues Second Circuit precedent concerning
    joint employment under the FLSA ................................................................... 6

II. Defendants' claims of delay and prejudice are misleading and wrong .......................... 13

    A. Defendants, Not Plaintiffs, Have Caused Repeated Delay in this Case .................. 13

    B. Granting the Motion to Amend Does Not Prejudice the Defendants or
    Proposed Defendants ....................................................................................... 15

CONCLUSION ............................................................................................................. 16

i

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................... 12

*Barfield v. N.Y.C. Health and Hosps. Corp.,*
    537 F.3d 132 (2d Cir. 2008)....................................................................... *passim*

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................... 12

*Brooklyn Sav. Bank v. O'Neil,*
    324 U.S. 697 (1945)........................................................................................ 7

*Chen v. Domino's Pizza, Inc.,*
    No. 09-107 (JAP), 2009 WL 3379946 (D.N.J. Oct. 16, 2009)......................... 11, 12

*Donovan v. Janitorial Servs., Inc.,*
    672 F.2d 528 (5th Cir. 1982) ......................................................................... 8

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,*
    282 F.3d 83 (2d Cir. 2002)............................................................................. 4

*Evans v. McDonald's Corp.,*
    936 F.2d 1087 (10th Cir. 1991) .................................................................... 11

*Hatcher v. Augustus,*
    956 F. Supp. 387 (E.D.N.Y. 1997) ............................................................... 11

*Herman v. RSR Sec. Servs. Ltd.,*
    172 F.3d 132 (2d Cir. 1999)....................................................................... 6, 8

*In re American International Group, Inc. Securities Litigation,*
    No. Civ. 8141 (JES), 2008 WL 2795141 (S.D.N.Y. Jul. 18, 2008)...................... 15

*In re Tamoxifen Citrate Antitrust Litig.,*
    429 F.3d 370 (2d Cir. 2005),......................................................................... 4

*McCarthy v. Dun & Bradstreet Corp.,*
    482 F.3d 184 (2d Cir. 2007)...................................................................... 4, 15

*Miller v. McDonald's Corp.,*
    945 P.2d 1107 (Or. St. App. 1997) ............................................................... 10

*Parker v. Domino's Pizza, Inc.,*
    629 So. 2d 1026 (Fla. Dist. Ct. App. 1993) ................................................. 6, 10

*Patterson v. Domino's Pizza, LLC*,
    143 Cal. Rptr. 3d 396 (2012) ..................................................................... 2, 6, 10

*Rutherford Food Corp. v. McComb*,
    331 U.S. 722, n.7 (1947).............................................................................. 6, 7, 12

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)........................................................................................... 3

*Taylor v. Vt. Dep't of Educ.*,
    313 F.3d 768 (2d Cir. 2002)............................................................................... 4

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001).............................................................................. 3

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316 (PAC), 2011 WL 4571792 (S.D.N.Y. Sept. 23, 2011)................................ 12

*United States v. Rosenwasser*,
    323 U.S. 360, 363, n.3 (1945)............................................................................. 1

*Zheng v. Liberty Apparel Co.*,
    355 F.3d 61 (2d Cir. 2003) ......................................................................... 6, 7, 9, 10

## STATUTES

29 U.S.C. § 203(d) ................................................................................................... 11

29 U.S.C. § 203(g).................................................................................................... 9

## OTHER AUTHORITIES

*Enforcing Fair Labor Standards in the Modern American Sweatshop:  Rediscovering the*
    *Statutory Definition of Employment*, 46 UCLA Law Review 983 (April 1999) ................. 2, 12

*The Fair Labor Standards Act*
    Ch. 3 IVB (2d ed. 2010)................................................................................... 10

Plaintiffs' Proposed Second Amended Complaint ("Proposed Complaint") sets forth detailed factual allegations, at ¶¶ 60-78, amply demonstrating an employment relationship between the proposed defendants, Domino's Pizza Inc., Domino's Pizza LLC and Domino's Pizza Franchising LLC (collectively, "Domino's"), and Plaintiffs under the broad definition of covered employer under the Fair Labor Standards Act ("FLSA"). Domino's had functional control over the work of Plaintiffs and others like them at company-owned stores and franchises within the Domino's "system," such as the DPNY, Inc. ("DPNY") stores. Plaintiffs' allegations include, *inter alia*, claims concerning Domino's' control over key functions of the Plaintiffs' jobs, including over hiring and management policies (¶ 63); over training (¶ 64); over staff equipment uniforms and supplies (¶ 65); over delivery areas and methods and procedures for delivery (¶ 65); and perhaps most important, over recordkeeping systems and their content (¶¶ 68-70), specifically, records of workers' delivery times (¶¶ 65, 67) and of wages and hours and payroll (¶ 68). Moreover, Domino's had the right or power to know of the work that was being performed in violation of the law. Specifically, the records to which Domino's had unfettered access gave them information necessary to determine not only that Plaintiffs had worked certain hours but also that they had not been paid for all of that time. (¶ 72-73) Finally, the Proposed Complaint alleges that Domino's had the power to terminate the franchise if it determined that the franchise had violated any laws or company policies, or engaged in practices that adversely affected the good will of the Domino's trademark. (¶ 77) All of these facts are more than sufficient for a finding that Domino's was an "employer" under the broad terms of the FLSA, which contains the broadest definition of covered employer of any employment law. *United States v. Rosenwasser*, 323 U.S. 360, 363, n.3 (1945).

As set forth in Plaintiffs' initial memorandum of law supporting this motion, under Second Circuit precedent, Plaintiffs' allegations – taken as true for the purposes of this motion –

1

are more than sufficient to establish *functional* control of the key components of Plaintiffs' jobs by Domino's, which is the standard for liability as an "employer" under the "economic realities" test of the FLSA.  The broad definition of "employer" under the FLSA "includes any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d) and the definition of "employ" under the FLSA "includes to suffer or permit to work."  29 U.S.C. §203(g).  Regardless of the labels and self-serving language that Domino's has put into its franchise agreements in order to evade responsibility under the FLSA and other employment laws, the allegations sufficiently plead that Domino's has "suffered or permitted" Plaintiffs to work and has acted directly or indirectly in the interest of Plaintiffs' other employers, and is therefore an "employer" under the FLSA.

In response to these allegations, Domino's disputes some of the facts alleged and seeks to distinguish Second Circuit precedent, claiming an exemption from FLSA coverage for franchisors where none appears in the statute.  Neither argument is availing.  First, the standard for review of the issue of futility is akin to that of a motion to dismiss:  the facts alleged are taken as true for the purposes of the motion.  Disputed issues of fact are properly addressed through the discovery process, and in this case, are likely to yield even richer and more detailed evidence of Domino's' functional control of the work of  its franchises' employees.  *See Patterson v. Domino's Pizza, LLC*, 143 Cal. Rptr. 3d 396 (2012).

Second, Domino's misconstrues precedent concerning functional control under the FLSA.  In particular, its arguments ignore the Second Circuit's mandate to conduct a case-by-case fact-intensive review that goes beyond forms and appearances to determine if the alleged joint employer, in fact, possessed control over the functions of the job, whether or not it exercised that control on a day-to-day basis.  There is no *per se* rule exempting all franchisors; nor are Plaintiffs required to allege or show subterfuge, as Domino's argues.  Finally, there is no

2

"see no evil" defense to liability.  If an entity has the requisite functional control, failure to review work-time records at its disposal does not relieve it of liability.

Finally, Defendants' argument that Plaintiffs have caused undue delay is both misleading and wrong.  As the Court is well aware, Plaintiffs have diligently prosecuted this case, while attempting to pursue settlement negotiations whenever possible.  Defendants' failure or refusal to respond to Plaintiffs' initial or revised demands until the settlement conference with the Court and their failure to provide requested information until just before or even after that conference are the primary sources of delay, along with their efforts to use the bankruptcy proceeding they initiated to prevent this motion from being heard.  Their attempts to blame any delay on Plaintiffs include various misstatements of the record and disclosures concerning confidential settlement negotiations.  Moreover, neither Defendants nor Domino's can seriously complain that there would be prejudice to any party by amending the Complaint where all formal discovery and all motion practice on certifying a Rule 23 class and/or decertifying the collective action lie ahead.

## ARGUMENT

### I.  DOMINO'S FAILS TO DEMONSTRATE THAT THE PROPOSED AMENDMENTS TO THE COMPLAINT WOULD BE FUTILE.

### A.  Factual disputes are irrelevant to the motion at issue and the submissions and judicial fact finding on Domino's control of its franchises support Plaintiffs' motion.

#### 1.  *Domino's' Submissions*

As set forth in Plaintiffs' initial memorandum on this motion, a proposed amendment to a complaint is not futile if it could withstand a Rule 12(b)(6) motion to dismiss.  "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974)).  It is black letter law that, on a motion to dismiss, the plaintiff's allegations are accepted as true for the purposes of the motion and all reasonable inferences are drawn in favor of the party opposing dismissal.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citing *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370, 384 (2d Cir. 2005)), *amended by* 466 F.3d 187, 200 (2d Cir. 2006); *see also Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,  282 F.3d 83, 87-88 (2d Cir. 2002).  "In general, . . . review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy,* 482 F.3d at 191 (citing *Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir. 2002).  Therefore, an argument of futility, like a motion to dismiss, is not an occasion to dispute the facts alleged.

Nevertheless, Domino's opposes the instant motion with affidavits from the defendant owners of the franchise and from a representative of Domino's.  To the extent that these affidavits dispute allegations made in the Complaint, for example, concerning the recordkeeping practices of Domino's or its role in the recordkeeping process, presentation of these factual claims is premature and inappropriate.  These disputes of fact should be addressed through the discovery process. [1]

Although the disputes of fact created by the affidavits are not relevant at this stage of the litigation, the admissions contained in the affidavits are probative.  First, the franchise agreements, attached as Exhibits A-D of the Declaration of Chris Kendric ("Kendric Decl."),

---

[1] Both Meltons attest that to the best of their knowledge, prior to this litigation, DPNY did not have any conversations with Domino's concerning various knowing violations of law.  *Id.* at ¶37. This denial begs the question what conversations they had with Domino's about their employment practices or any of the laws referred to in the Complaint, apart from knowing violations.

corroborate many of the allegations in the Proposed Complaint, including allegations concerning recordkeeping and access to recordkeeping.  The franchise agreements, corroborate allegations related to payroll records (Kendric Decl., Exs. A-D, §§ 14.1, 14.3), operating procedures, qualifications of employees and methods and procedures relating to delivering customer orders (*id*., Exs. A-D, §§ 15.1, 15.4), and the power to terminate the franchise for violations of law or conduct which, in Domino's' judgment, "adversely affects the reputation of the Store or the goodwill associated with the Marks" (*id*., Exs. A-D, §§ 15.2, 18.2.1(f), (l)).

Specifically, with respect to records, the franchise agreements require the franchisee to establish recordkeeping that conforms to requirements prescribed by Domino's, including payroll records, and to retain those records according to Domino's' policies.  *id*., Exs. A-D, § 14.1.  Under the franchise agreements, the franchisee also agrees that Domino's "shall have full access . . . to all of your computer data, equipment and systems containing any and all of the information, records and reports required by this Section 14.1 or any other provision of this Agreement."  *Id*.  In addition, the operating procedures with which the franchisee must comply under the franchise agreements include, but are not limited to, "specifications, standards and operating procedures and rules" relating to a variety of subjects, including "qualifications, dress, grooming general appearance and demeanor of [the franchisee] and [its] employees" and the hours the store will be open for business.  *Id*., Exs. A-D, §§  15.1(b), (e).  Mandatory and suggested operating procedures are also communicated through the Operating Manual.  *Id*., Exs. A-D, § 15.4.

The franchise agreements also give Domino's the authority to require installation and use of the Domino's PULSE computer system.  *Id*., Exs. A-D, § 15.9.  Moreover, the Meltons admit that DPNY "agreed to and does use PULSE to record the time a delivery order is dispatched (out

the door) and the corresponding delivery-completed time for each order." ¶ 34, Affidavits of
David and Angelina Melton.  They also admit that DPNY used PULSE for payroll.  *Id.* at ¶ 36.
In sum, the affidavits support Plaintiffs' claim that Domino's had functional control over the
operation of DPNY, specifically with respect to its employees.

2.     *Recent Judicial Fact Finding*

The recent decision of the California Court of Appeal in the employee sexual harassment
case, *Patterson v. Domino's Pizza, LLC*, 143 Cal. Rptr. 3d 396 (2012), issued after Plaintiffs
submitted their initial memorandum of law in support of this motion, provides further support for
Plaintiffs' motion to amend.  In *Patterson*, the court reversed summary judgment and reinstated
claims against Domino's by a franchise employee.  The decision details the degree of control that
Domino's exercised over the franchise, specifically through its area manager and through
Domino's Manager's Reference Guide.  *Id.* at 399-400.  The decision also cites *Parker v.
Domino's Pizza, Inc.*, 629 So. 2d 1026, 1029 (Fla. Dist. Ct. App. 1993), finding that the
"'manual which Domino's provides to its franchisees is a veritable bible for overseeing a
Domino's operation.'"  In short, the case law on Domino's as a franchisor strongly suggests that
discovery will only yield more details of Domino's intimate functional control of its franchises'
employment practices.

**B.     Domino's ignores or misconstrues Second Circuit precedent concerning joint
employment under the FLSA**.

Domino's' legal arguments claiming that Plaintiffs' motion to amend is futile simply
misconstrue Second Circuit precedent interpreting the sweeping definition of "employ" under the
FLSA.  *See Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008); *Zheng v.
Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132
(2d Cir. 1999).  These cases, in turn, derive from the Supreme Court's holding in *Rutherford*

6

*Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) (setting forth factors that, under the

"circumstances of the whole activity" established an employer-employee relationship under the

FLSA. *See Barfield,* 537 F.3d at 141; *Zheng*, 355 F.3d at 70 (both citing *Rutherford*). The crux

of Domino's' argument is that it does not engage in day-to-day supervision of the employment

practices of DPNY; that under the franchise agreement, DPNY has agreed to supervise its own

staff; and that DPNY is contractually "independent" of Domino's. This argument ignores or

misconstrues both the statutory language of "suffer or permit to work" as well as Second Circuit

precedent interpreting that language to bring within the definition of "employer" entities with

"functional control" over the workplace, regardless of labels, formal arrangements, or contract.

First, an employer cannot contract out of its obligations under the FLSA. *See, e.g.*,

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945) (employer cannot contract away its

obligation to pay the minimum wage or overtime pay). Thus, as with any other contract,

language in a franchise agreement disavowing the franchisor's role as an employer has no legal

effect under the FLSA, if the franchisor entity in question, in fact, retains sufficient "functional

control" to be a joint employer under the Act. *See Barfield*, 537 F.3d at 143 (discussing *Zheng*

and the functional control test). The analysis of functional control is performed case by case and

looks at the "economic realities" of the relationship.[2] *Id.* Those realities are measured against

the broad definitions of "employer" that "includes any person acting directly or indirectly in the

interest of an employer in relation to an employee." 29 U.S.C. §203(d), and "employ" which

"includes to suffer or permit to work." 29 U.S.C. § 203 (g). Whether or not DPNY is deemed

"independent" of Domino's in the franchise agreements, the allegations in the Proposed

---

[2] As the Second Circuit noted in *Barfield*, "[b]ecause of the fact-intensive character of a
determination of joint employment, we rarely have occasion to review determinations made as a
matter of law . . . ." 537 F.3d at 143-44 (noting that two of three leading cases in this circuit
were appeals from judgments following bench trials (citing *Zheng*, 355 F.3d at 76 n.13)).

Complaint make it clear that, in fact, Domino's operates a "system" of company-owned stores and franchises under strict regulation, including regulation of employment practices and employees.  Proposed Complaint at ¶ 60.  DPNY's "perspective" on Domino's' role, cited in the affidavits, is simply not controlling.  The economic reality of the relationship, as set forth in the Proposed Complaint, and not contractual labels, is controlling for the purposes of this motion.

Second, the functional control test goes well beyond the direct control test of the common law.  *Barfield*, 537 F.3d at 143.  Domino's' argument that it does not exercise day-to-day supervision of employees is not determinative under the functional control test.  Domino's does not need to have exercised its control daily.  As the Second Circuit held in *Herman*, "status [as a joint employer] does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees.  Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do[] not diminish the significance of its existence.'"  172 F.3d at 139 (*citing Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982)).  Here, the allegations do include "continuous monitoring" of delivery times (¶ 65), and they also set forth myriad other ways that Domino's retains and exercises control, whether or not it does so on a "day-to-day" basis.

In the face of its authority to obtain or audit all paper and electronic records of DPNY, Domino's asserts that DPNY has not actually transmitted payroll data to it, an issue to be pursued in discovery.  However, Domino's does not deny that it monitors delivery times, and in any event, Domino's does not deny that it has full access to all of these records under the franchise agreements.  Kendric Decl., Exs. A-D, §§ 14.1, 14.3.  In short, Domino's retained full access to all records that would specify the hours and minutes of work performed by Plaintiffs.

It also retained access to records that show that Plaintiffs were not fully paid for all of those hours. In *Barfield*, the defendant, Bellevue Hospital, argued unsuccessfully that it had never reviewed the time records that it had access to and therefore did not know that different temporary agencies had assigned Ms. Barfield to Bellevue for a total of more than 40 hours in various weeks. The Second Circuit rejected that argument. *Barfield*, 537 F.3d at 144. Bellevue's failure to review records showing Ms. Barfield's overtime work did not excuse it from liability, given other indicia of control. Similarly, given its functional control of DPNY's employees, Domino's' "see no evil" defense is unavailing.[3]

Third, Domino's complains that the requirements and rights it imposes on franchisees are typical of all franchise relationships and that a decision finding it to be a joint employer would inappropriately implicate all franchisors. Of course, there is no record here of what functional control over the jobs in its stores other franchisors retain. To address Domino's example, there is no reason to believe that banks typically involve themselves in the management of borrowers' employees in this manner or to the degree that Domino's does with its franchisees' employees. The point is that the analysis is case by case and not based on labels or forms. There is no *per se* rule exempting any particular form of relationship between joint employers. Nor would a finding of joint employment in one franchise case necessarily implicate other franchisors (or banks) if those other franchisors do not exercise the same degree of functional control.

Domino's also argues that the Second Circuit's decision in *Zheng v. Liberty Apparel Company, Inc.*, establishes a "subterfuge" requirement to establish that an otherwise legitimate

---

[3] Domino's takes issue with the Proposed Complaint's references to wage-and-hour litigation against a company-owned store, ¶ 74, because the cited case was not against a franchisee. But that is precisely the point. Having been sued itself for similar violations in New York City, Domino's cannot, like Louie in *Casablanca*, be "shocked, shocked" to find wage and hour violations in its "system."

business form, such as a franchisor/franchisee relationship, gives rise to liability on the part of the party asserting independence from the direct employer.  However, this misinterpretation of *Zheng* was squarely rejected by the Second Circuit in *Barfield*.  As the *Barfield* court held, "nothing in *Zheng* suggests . . . that functional control factors are relevant *only* to identifying subterfuge.  To the contrary, *Zheng* makes clear that the reason for 'looking beyond a defendant's formal control over the physical performance of a plaintiff's work' is to give full 'content to the broad "suffer or permit" language in the statute.'"  *Barfield*, 537 F.3d at 146, citing *Zheng*, 355 F.3d at 75-76 (quoting 29 U.S.C. § 203(g)).  In other words, evidence of subterfuge can be valid evidence of functional control, but it is not a necessary element of such a claim.[4]

Domino's also complains that Plaintiffs do not cite any decisions concerning franchisors.  However, as noted above, the California Court of Appeal recently held that Domino's Pizza, LLC, one of the Domino's entities at issue here, was a joint employer of an employee of a franchise who has filed a sexual harassment case.  *Patterson v. Domino's Pizza, LLC*, 143 Cal. Rptr. 3d 396 (2012).  The standard of "substantial control" under California anti-discrimination law analyzed in that action appears to be a narrower test than the FLSA test at issue here.  Nevertheless, in that case, the Domino's franchisor was found to be a joint employer.  Similarly, in *Parker v. Domino's Pizza, Inc.*, 629 So. 2d 1026 (Fl. Dist. Ct. App. 1994), a Florida tort action examining liability under narrower agency principles than applicable under the FLSA, the appellate court held that "it was error to determine as a matter of law that Domino's does not retain the right to control the means to be used by its franchisee to accomplish the required

---

[4]  Here, it remains a question for discovery whether the franchise agreement language seeking to absolve Domino's of any responsibility as an employer is part of a subterfuge, given the extensive role it retains under the franchise agreements in running the highly integrated "Domino's system" described in the Annual Statement.

tasks." *Id.* at 1029.  In addition, in *Miller v. McDonald's Corp.*, 945 P.2d 1107 (Or. Ct. App. 1997), another tort action applying agency principles through a "right to control" test, an Oregon appellate court reversed a grant of summary judgment to the franchisor.  Thus, contrary to Domino's' claim, there is ample precedent to allow litigation of claims against a franchisor, including Domino's, even in cases applying more stringent agency principles.

The cases cited by Domino's to support its claim that franchisors cannot be found to be employers are inapposite.  Two of those cases, *Evans v. McDonald's Corp.*, 936 F.2d 1087 (10th Cir. 1991) and *Hatcher v. Augustus*, 956 F. Supp. 387 (E.D.N.Y. 1997), applied a much more stringent standard for finding an employment relationship than the broad suffer or permit test under the FLSA.  *See Evans*, 936 F.2d at 1089 (applying a common-law based test promulgated by the National Labor Relations Board that looks at interrelation of operations and common management, ownership or financial control)[5]; *Hatcher*, 956 F. Supp. at 389-90 (contrasting the hybrid test drawn from law of agency, largely same as common law agency test, applied in that case, with FLSA "economic realities" standard).  Moreover, in *Evans,* in contrast to the instant case, the court found that the "only real control" the franchisor held was the power to terminate the franchise.  *Evans*, 936 F.2d at 1090.

The decision in *Chen v. Domino's Pizza, Inc.*, No. 09-107 (JAP), 2009 WL 3379946 (D.N.J. Oct. 16, 2009), tells us only that plaintiffs cannot withstand a motion to dismiss based on conclusory pleadings concerning joint employment.  In that case, "Plaintiffs simply make the conclusory statement that Domino's is an employer 'within the meaning of 29 U.S.C. § 203(d) . . . .'  The complaint fails to make any specific allegations against Domino's to support this

---

[5] Indeed, the *Evans* test resembles the much more stringent "single enterprise" test applied in other contexts under the FLSA.  Ellen C. Kearns, *The Fair Labor Standards Act*, Ch. 3 IVB (2d ed. 2010).

contention." *Id.* at *4. Rather than indicating a special burden for pleadings against franchisors, the *Chen* decision represents nothing more than a straightforward application of pleading rules under the decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In contrast, here, Plaintiffs have set forth a long list of specific allegations to support their claim that Domino's has been their joint employer under the FLSA. *See* Proposed Complaint at ¶¶ 60-78.

In sum, Domino's' arguments simply ignore or misconstrue the broad statutory language and test under the FLSA articulated by the Second Circuit. As set forth in Plaintiffs' initial memorandum of law supporting this motion, the FLSA's "suffer or permit to work" definition derives from child labor laws designed to make sure that anyone who knew or should have known that a child was working and had the power to stop the work, did so. Specifically, in defining "employ" to include "to suffer or permit to work," Congress drew from child labor laws that held businesses using middlemen that illegally hired and supervised children liable for violations of these statutes, even where traditional agency control factors were not present. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, n.7 (1947); Bruce Goldstein, Marc Linder, Laurence E. Norton II & Catherine Ruckelshaus, *Enforcing Fair Labor Standards in the Modern American Sweatshop: Rediscovering the Statutory Definition of Employment*, 46 UCLA L. Rev. 983 (April 1999) (discussing this history, and noting that under these child labor statutes, "if a person was in a position to prevent the employment of the child on his business premises, in his business, or in the performance of the specific task that was prohibited, he was held accountable for having permitted or suffered any work performed"). Thus, under the language of the FLSA, as in *Barfield,* not acting on available information leads to liability if one had the power to stop the work and did not do so. *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2011 WL 4571792, at *2 (S.D.N.Y. Sept. 23, 2011).

Plaintiffs allege that Domino's exercised significant functional control over the franchises, including over their employees. Among other things, Domino's had information setting forth the delivery times of Plaintiffs. It also had full access to the contrasting payroll records showing that the workers were not properly paid for that time. It also had the power to terminate the franchise or to threaten to do so in order to obtain compliance with the law. That it abdicated its responsibilities is an argument for liability, not for exemption.

## II.   DEFENDANTS' CLAIMS OF DELAY AND PREJUDICE ARE MISLEADING AND WRONG.

Defendants also claim that Plaintiffs have caused undue delay in this action and that Defendants, as well as Domino's, would somehow be prejudiced if the motion were granted. Defendants' arguments, however, misstate the record of this case, including through inaccurate and unauthorized disclosure of confidential settlement discussions. In short, Plaintiffs have no interest in delaying the case and have not delayed the case, except by acquiescing to engage in settlement negotiations in futile attempts to resolve the dispute.

### A.     Defendants, Not Plaintiffs, Have Caused Repeated Delay in this Case.

Defendants' dilatory tactics, not Plaintiffs, are responsible for the delays in this action. As this Court is aware, contrary to their mischaracterization of the negotiations, Defendants waited until the second settlement negotiations in September 2011 to disclose their first offer, almost a year after Plaintiffs made their first demand and requested a counter-offer. Moreover, contrary to Defendants' assertions, and as demonstrated in emails from Defense counsel attached as Exhibit A to the Declaration of Richard Blum, dated October 4, 2012 ("Blum Decl."), Plaintiffs did not receive all of the data they requested to conduct their analyses of Defendants' records, until days before the September 2011 settlement conference. It was this data analysis that led Plaintiffs to consider bringing the instant motion. Despite repeated requests from

13

Plaintiffs prior to that conference, Defendants did not share any information about their assets prior to the conference and were not prepared to do so fully even at the conference.  Given the demand made a year before on behalf of the named plaintiffs alone and the analyses of the data conducted by Plaintiffs prior to the settlement conference and shared with Defendants, the miniscule counter-offer made at the settlement conference was nothing more than facetious.

Following the failed December 2011 settlement negotiation, Plaintiffs promptly wrote to Domino's in an attempt to bring these potential defendants to the settlement table.  *See* Blum Decl., Ex. B.  After giving Domino's an opportunity to respond, Plaintiffs promptly wrote to the Court to request permission to move to amend the Complaint to add Domino's.  *See* Blum Decl., Ex. C.  In an excess of caution, Plaintiffs sought explicit permission from the bankruptcy court to proceed with the instant motion.  The bankruptcy court ordered that, to the extent filing the motion to amend or the second amended complaint to add Domino's was a violation of the stay, the stay was lifted.  *See* Blum Decl., Ex. D.  Upon obtaining that permission, Plaintiffs proceeded on schedule.  Defendants then sought to delay this motion by making a motion in bankruptcy court seeking to enjoin the motion.  DPNY then essentially withdrew its motion in the bankruptcy court and stipulated to allow this motion to proceed.  *See* Blum Decl., Ex. E at ¶ 4. Defendants' claim that allowing Plaintiffs to prosecute their claims against Defendants by adding the proposed defendants "defies the bankruptcy court's stay order and is manifestly unjust," Defendants' Memorandum at 7, is obviously incorrect and misleading.

In sum, Defendants now seek to hide behind the results of their own dilatory tactics to block Plaintiffs' motion.  They should not be permitted to do so.

**B.**     **Granting the Motion to Amend Does Not Prejudice the Defendants or Proposed Defendants**.

Contrary to Defendants' assertions, this case is still in its early stages.  Although a collective action has been conditionally certified and informal discovery has taken place, no formal discovery has been conducted.  Consequently, the litigation is far from any motions to certify a Rule 23 class or to de-certify the collective action.  Moreover, Defendants and proposed defendants' complaints that Domino's would be prejudiced by entering the case after the opt-in process are disingenuous.  The opt-in process tolled the statute of limitations for opt-in members, preserving their claims and, at the same, time limited those eligible to participate in the collective action.  Domino's, like Defendants, would still have an opportunity to seek to de-certify the collective action and to oppose class certification under Rule 23 with respect to the state law claims.  The complaint that they will have to endure additional discovery burdens because they did not have a chance to oppose the opt-in process has no merit.  First, they cite no basis for opposing the opt-in process.  Second, given the Rule 23 allegations, they would be subjected to class-wide discovery in any event.  In short, Domino's would be entering the case at exactly the right moment for this case to move forward to formal discovery and summary judgment motions. They have missed little but Defendants' dilatory tactics and would not be prejudiced by joining the case now.

In the McCarthy case cited by Defendants, the trial court had rejected an attempt to add an entirely new claim after discovery had been completed.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Similarly, in *In re American International Group, Inc. Securities Litigation*, No. Civ. 8141 (JES), 2008 WL 2795141 (S.D.N.Y. Jul. 18, 2008), the trial court rejected new claims against new parties after there had been extensive discovery completed and class certification motions filed.  In contrast, in the instant case, formal discovery has not

15

even begun, neither class certification nor collective action decertification motions have been filed, and Plaintiffs are seeking not to add an entirely new claim, but rather to add a set of parties that have no doubt been involved in this matter from the beginning.[6]  There is simply no reason to deny Plaintiffs' request to file the Proposed Complaint.

**CONCLUSION**

For the foregoing reasons, Plaintiffs ask that the Court grant their motion to amend the Complaint.

Respectfully Submitted,

_____/s/ Richard Blum_____
Steven R. Banks
Adriene L. Holder
Karen Cacace
Richard E. Blum
Hollis V. Pfitsch
THE LEGAL AID SOCIETY
Employment Law Unit
199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3465 (phone)
(KCacace@legal-aid.org)
(RBlum@legal-aid.org)
(HVPfitsch@legal-aid.org)
*Attorneys for Plaintiffs*

Adam S. Hakki
John A. Nathanson
Darren K. Ishmael
Mojoyin Onijala
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069
(212) 848-4000 (phone)
(ahakki@shearman.com)
*Of Counsel*

---

[6] The Meltons' affidavits deny communications with Domino's about the allegations in the Complaint prior to the filing of this action, not after.

16