UNITED STATES DISTRICT COURT                    **ECF**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
GIL SANTIAGO CANO, HECTOR          : 10 Civ. 7100 (ALC) (JCF)
HERNANDEZ ZAVALA, JUAN HERNANDEZ   :
ZAVALA, OMAR HERNANDEZ ZAVALA,     :
ARISTEO BASURTO, CARLOS RODRIGUEZ  :
HERRERA, LEONARDO JUAREZ,          :       MEMORANDUM
SAUL ISIDRO, ABOUBACAR GOUEM,      :       AND   ORDER
ANATOLE YAMEOGO on behalf          :
of himself and all others similarly:
situated,                          :
                Plaintiffs,        :
                                   :
     - against -                   :
                                   :
DPNY, INC. d/b/a DOMINO'S PIZZA,   :
BMW PIZZA, INC. d/b/a DOMINO'S     :
PIZZA, DAVID L. MELTON,            :
ANGELINA M. MELTON, ZIA SHAH,      :
SHAIK SHAMIN, MOHAMMED PATWARY,    :
MOHAMMED MOCTER,                   :
                                   :
                Defendants.        :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     Gil Santiago Cano, Hector Hernandez Zavala, Juan Hernandez

Zavala, Omar Hernandez Zavala, Aristeo Basurto, Carlos Rodriguez

Herrera, Leonardo Juarez, Saul Isidro, Aboubacar Gouem, and Anatole

Yameogo, on behalf of themselves and all others similarly situated,

bring this action against DPNY, Inc. d/b/a Domino's Pizza, BMW

Pizza, Inc. d/b/a Domino's Pizza, David L. Melton, Angelina M.

Melton, Zia Shah, Shaik Shamin, Mohammed Patwary, and Mohammed

Mannaf a/k/a Mohammed Mocter.[1]  The plaintiffs, who are current and

former employees at Domino's Pizza stores owned or managed by the

defendants, seek damages and injunctive relief under the Fair Labor

---

[1] The caption lists Mohammed Mocter as a defendant.  According
to the defendants, his true name is Mohammed Mannaf.

Standards Act (the "FLSA") and New York Labor Law ("NYLL").

The plaintiffs now move under Rules 15(a) and 21 of the Federal Rules of Civil Procedure for leave to file a Second Amended Complaint to add as defendants Domino's Pizza Inc., Domino's Pizza LLC, and Domino's Pizza Franchising LLC (the "Proposed Defendants").

For the reasons set forth below, the motion is granted.

<u>Background</u>

A.  <u>Facts</u>

According to the plaintiffs, David Melton and Angelina Melton are the owners and operators of four Domino's Pizza stores in New York. (First Amended Collective/Class Action Complaint ("FAC"), ¶¶ 20, 22, 24).   Zia Shah, Shaik Shamin, Mohammed Patwary, and Mohammed Mannaf manage these stores. (FAC, ¶¶ 25-29). DPNY, Inc., is a New York corporation that operates as Domino's Pizza at some or all of the defendants' stores. (FAC, ¶¶ 30, 33). David Melton is the president and Angelina Melton is the Franchise Administrator of DPNY, Inc. (FAC, ¶¶ 31-32). BMW Pizza, Inc., was a New York corporation that was doing business as Domino's Pizza at some or all of the defendants' stores until February 19, 2002, at which time it merged with DPNY, Inc. (FAC, ¶¶ 37, 40). David Melton was the President and Angelina Melton was the Franchise Administrator of BMW Pizza, Inc. (FAC, ¶¶ 38-39).

In their First Amended Complaint, the plaintiffs allege that the defendants willfully engaged in unlawful employment policies, patterns, or practices, in violation of both federal and state law.

(FAC, ¶ 1).   They contend that the defendants removed recorded hours from time records and required them to work off-the-clock, as a result of which the plaintiffs were paid less than the minimum wage, were paid less than they were entitled to in overtime wages, and in some cases were not paid for the hours that they worked. (FAC ¶¶ 98-116).   They claim that the defendants paid them "tipped wages" without complying with the prerequisites for taking a tip credit and applied tipped wage calculations even when the plaintiffs performed tasks for which tips were not available. (FAC, ¶¶ 120-132).   The plaintiffs also allege that the defendants took illegal deductions from their wages for required uniforms and did not pay the uniform laundering allowance (FAC, ¶¶ 138-42); did not reimburse them for the required use and maintenance of delivery bicycles (FAC, ¶¶ 143-147); failed to pay spread-of-hours wages (FAC, ¶¶ 149-151); did not provide statutorily mandated breaks (FAC, ¶¶ 153-155); and did not provide the required notice of employment laws (FAC, ¶¶ 128-130).   In addition, they contend that the defendants retaliated against them when they voiced complaints about these unlawful practices by reducing their schedules, removing them from the schedule all together, or terminating them. (FAC, ¶¶ 158-169).

    B.   Procedural History

    The Complaint in this action was filed on September 16, 2010. On November 15, 2010, the plaintiffs filed a First Amended Complaint that added Leonardo Juarez, Saul Isidro, Aboubacar Gouem, and Anatole Yameogo as plaintiffs.   The parties stipulated to

3

conditional certification of an FLSA collective action and, after the close of a three month opt-in period on July 14, 2011, the case now includes 44 opt-in claimants.

The plaintiffs move for leave to file a second amended complaint to add corporate franchisors, Domino's Pizza, Inc., Domino's Pizza LLC, and Domino's Pizza Franchising LLC (the "Proposed Defendants"), as defendants.   According to the plaintiffs, each of these entities grants franchises to operate Domino's Pizza stores in New York under the Domino's System and sublicenses to use the Domino's Pizza trademark.  (Second Amended Complaint ("SAC"), ¶ 46).   They contend that the Proposed Defendants are their employers within the meaning of the FLSA and NYLL.  The defendants and Proposed Defendants oppose the motion.

<u>Discussion</u>

    A.   <u>Standard for Amendment</u>

    A motion to amend is generally governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  If the amendment seeks to add a party, Rule 21 of the Federal Rules of Civil Procedure, which allows addition of a party "at any time, on just terms," also comes into play.  Fed. R. Civ. P. 21.   However, that creates no additional obstacle, as the "showing necessary under Rule 21 is the same as that required under Rule 15(a)."  <u>Johnson v. Bryson</u>, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012); <u>see</u> <u>Soler v. G & U, Inc.</u>, 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (courts apply "'the same standard of liberality afforded to motions

to amend pleadings under Rule 15.'" (quoting <u>Fair Housing Development Fund Corp. v. Burke</u>, 55 F.R.D. 414, 419 (E.D.N.Y. 1972))).

Notwithstanding the liberality of the general rules, "it is within the sound discretion of the court whether to grant leave to amend." <u>John Hancock Mutual Life Insurance Co. v. Amerford International Corp.</u>, 22 F.3d 458, 462 (2d Cir. 1994); <u>accord</u> <u>Krumme v. WestPoint Stevens Inc.</u>, 143 F.3d 71, 88 (2d Cir. 1998). Regarding the use of this discretion, the Supreme Court has stated:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should . . . be freely given.

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (internal quotation marks omitted). Thus, joinder will be permitted absent futility, undue delay, bad faith, or prejudice.

  B. <u>Proposed Defendants</u>

In this case, permitting the amendment would be neither futile nor prejudicial and the plaintiffs have not acted in bad faith or with undue delay.

  1. <u>Futility</u>

An amendment may be denied as futile if the proposed pleading would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>Oneida Indian Nation of New York v. City of Sherill</u>, 337 F.3d 139, 168 (2d Cir. 2003), <u>rev'd on other grounds</u>, 544 U.S. 197 (2005); <u>Smith v. CPC International,</u>

Inc., 104 F. Supp. 2d 272, 274 (S.D.N.Y. 2000).   To overcome objections of futility, the moving party must merely show that it has "at least colorable grounds for relief." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 783 (2d Cir. 1984) (citation omitted); see also Kaster v. Modification Systems, Inc., 731 F.2d 1014, 1018 (2d Cir. 1984); cf. Starr v. Sony BMG Music Entertainment, 592 F.3d 314, 321 (2d Cir. 2010) (complaint will overcome motion to dismiss when it alleges sufficient facts to "suggest" elements of claim); Stoner v. Young Concert Artists, Inc., No. 11 Civ. 7379, 2012 WL 512660, at *3 (S.D.N.Y. Feb. 15, 2012).   A "formulaic recitation" of the elements is not enough.   Bell Atlantic v. Twombly, 550 U.S. 544, 555(2007). Instead, "[w]hat is required are 'enough facts to state a claim to relief that is plausible on its face.'"   Starr, 592 F.3d at 321 (quoting Twombly, 550 U.S. at 570).   The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference" that the accused entity engaged in the alleged conduct.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).   As when considering a motion under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Henneberry v. Sumitomo Corp. of America, 532 F. Supp. 2d 523, 527 (S.D.N.Y. 2007).

In the Second Amended Complaint, the plaintiffs allege that Domino's Pizza, Inc., a business incorporated in Delaware, does business in New York through its subsidiaries, Domino's Pizza LLC

and Domino's Pizza Franchising LLC. (SAC, ¶¶ 42-47).  They assert
that the Proposed Defendants run a pizza delivery business
dependent on their franchise and corporate-owned stores selling and
delivering pizzas under a prescribed model, and that their profits
and financial well-being depend in part upon the success of the
defendants' stores. (SAC, ¶¶ 60, 78).  The plaintiffs claim that
the Proposed Defendants promulgated and implemented employment
policies including compensation, hiring, training, and management
policies for all of their stores, including the defendants' stores.
(SAC, ¶¶ 56, 63-64).  They contend that the Proposed Defendants
exercised their authority to control, directly or indirectly, the
defendants' timekeeping and payroll practices by requiring the use
of a trademarked, computerized record-keeping system called
Domino's PULSE ("PULSE") that, among other things, tracked hours
and wages and retained payroll records, all of which were regularly
submitted to and monitored by the Proposed Defendants.  (SAC, ¶¶
68-69, 71).  According to the plaintiffs, the Proposed Defendants
knew or should have known of the alleged unlawful practices at the
defendants' stores because these practices were obvious from the
face of the records. (SAC, ¶ 73).  The plaintiffs also claim that
the Proposed Defendants maintained control over many aspects of the
defendants' stores that directly related to their employment,
including specifying the uniforms, equipment, vehicles, and
supplies used by them; setting their delivery areas and monitoring
their delivery times; and detailing the methods and procedures for
performing their work. (SAC, ¶¶ 61-62, 65).  They claim that the

Proposed Defendants enforced their policies by means of a computer program that tracked employee performance and by exercising their right to inspect and audit the defendants' stores. (SAC, ¶¶ 67, 69-70). They also contend that the Proposed Defendants had the power to stop these alleged employment violations by terminating, or threatening to terminate, the franchise agreements. (SAC, ¶ 77). Based on these assertions, the plaintiffs contend that the Proposed Defendants were joint employers under the FLSA and NYLL. (SAC, ¶¶ 47, 53).

The defendants and the Proposed Defendants oppose amendment as futile. They argue that the plaintiffs' allegations are conclusory, fail to establish the Proposed Defendants' control over the plaintiffs' employment, and attempt "to bootstrap the relationship between the Proposed [] Defendants and DPNY into an 'employer-employee' relationship between the Proposed [] Defendants and [the] [p]laintiffs." (Defendants' Memorandum in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint ("Def. Memo.") at 9-10; Proposed Additional Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint ("Proposed Def. Memo.) at 7-13.

I decline to consider the affidavits and franchise agreements that the Proposed Defendants have submitted. Because determination of futility is subject to the same standards as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[f]utility is generally adjudicated without resort to any outside evidence." Wingate v. Gives, No. 05 Civ. 1872, 2009 WL 424359, at

*5 (S.D.N.Y. Feb. 13, 2009) (citing <u>Nettis v. Levitt</u>, 241 F.3d 186, 194 n.4 (2d Cir. 2001)); <u>accord</u> <u>Cecilio v. Kang</u>, No. 02 Civ. 10010, 2004 WL 2035336, at *17 (S.D.N.Y. Sept. 14, 2004) ("Normally, a motion for leave to amend is adjudicated without resort to any outside evidence."); <u>Dipace v. Goord</u>, 308 F. Supp. 2d 274, 278 (S.D.N.Y. 2004) (same); <u>Durabla Manufacturing Co. v. Goodyear Tire and Rubber Co.</u>, 992 F. Supp. 657, 661 n.4 (S.D.N.Y. 1998) ("The Court declines to consider the deposition testimony submitted by defendants in opposition to plaintiff's motion for leave to amend the Complaint."). The Second Amended Complaint neither incorporates by reference nor relies on the documents proferred by the Proposed Defendants, and therefore they are not "integral" to the complaint. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 154 (2d Cir. 2002) ("[A] plaintiff's <u>reliance</u> on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." (emphasis in original) (footnote omitted)). Accordingly, determination of futility must be based solely on the allegations in the Second Amended Complaint without resorting to those extraneous materials.

The FLSA defines an employer as one who "suffer[s] or permit[s]" an employee to work. 29 U.S.C. § 203(g). "This is the 'broadest definition [of "employ"] that has ever been included in any one act.'" <u>Zheng v. Liberty Apparel Co.</u>, 355 F.3d 61, 69 (2d Cir. 2003) (alteration in original) (quoting <u>United States v. Rosenwasser</u>, 323 U.S. 360, 363 n.3 (1945)) (footnote omitted). It

encompasses "'working relationships, which prior to [the FLSA], were not deemed to fall within an employer-employee category.'" Id. (quoting Walling v. Porterland Terminal Co., 330 U.S. 148, 150-51 (1947)); see Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947) ("This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category." (internal quotations marks omitted)).

"The regulations promulgated under the FLSA expressly recognize that a worker may be employed by more than one entity at the same time." Zheng, 355 F.3d at 66 (citing 29 C.F.R. § 791.2). This means that "'even when one entity exerts "ultimate control" over a worker, that does not preclude a finding that another entity exerts sufficient control to qualify as a joint employer under the FLSA.'" Jean-Louis v. Metropolitcan Cable Communications, Inc. 838 F. Supp. 2d 111, 121 (S.D.N.Y. 2011) (quoting Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 148(2d Cir. 2008)).

In FLSA cases, whether an employer-employee relationship exists "should be grounded in 'economic reality rather than technical concepts.'" Barfield, 537 F.3d at 141 (quoting Goldberg v. Whitaker House Cooperation, Inc., 366 U.S. 28, 33 (1961)); see Zheng, 355 F.3d at 66. It is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Barfield, 537 F.3d at 141-42. The Second Circuit has identified four factors to be considered under the "economic

reality test": "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)); see Barfield, 537 F.3d at 142.   The Circuit noted that while meeting these four factors "'can be sufficient to establish employ[ment] status,' [it] had never held 'that a positive finding on those four factors is necessary to establish an employment relationship.'" Barfield, 537 F.3d at 143 (emphasis and first alteration in original) (quoting Zheng, 355 F.3d at 69). Courts must look beyond "an entity's formal right to control the physical performance of another's work," Zheng, 355 F.3d at 69; indeed, simply exercising "functional control" over workers may be sufficient to be an employer under the FLSA.   Id. at 72. Accordingly, "an entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours or pay them." Id. at 70 (footnote omitted). Nor does employer status "require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees.  Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA." Herman, 172 F.3d at 139.

In deciding whether an entity is a joint employer, "different

sets of relevant factors" apply, "based on the factual challenges posed by particular cases." Barfield, 537 F.3d at 142. "The Second Circuit has declined to circumscribe [a court's] analysis to a precise set of factors, . . . noting that a district court is 'free to consider any other factors it deems relevant to its assessment of the economic realities.'" Lin v. Great Rose Fashion, Inc., No. 08 CV 4778, 2009 WL 1544749, at *12 (E.D.N.Y. June 3, 2009) (quoting Zheng, 355 F.3d at 71-72); accord Herman, 172 F.3d at 139 ("[A]ny relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition.").

Courts in this circuit have yet to address whether, under the FLSA, a franchisor is an employer of an employee who works for an independently owned franchise.  Courts that have addressed this issue in other circuits have applied the "economic reality test" and have generally concluded that franchisors are not employers within the meaning of the FLSA.  See, e.g., Reese v. Coastal Restoration and Cleaning Services, Inc., No. 1:10cv36, 2010 WL 5184841, at *3 (S.D. Miss. Dec. 15, 2010) (applying "economic reality test" and finding franchisor defendant is not employer under FLSA); Singh v. 7-Eleven, Inc., No. C-05-04534, 2007 WL 715488, at *3-6 (N.D. Cal. March 8, 2007) (same); Donovan v. Breaker of America, Inc., 566 F. Supp. 1016, 1019, 1021 (E.D. Ark. 1983) (finding evidence presented at trial insufficient to conclude franchisor defendants are employers under FLSA); see Howell v. Chick-Fil-A, Inc., No. 92-30188, 1993 WL 603296, at *4-5 (N.D. Fla. Nov. 1, 1993) (applying "economic reality test" and finding owner

of franchise at which plaintiff worked was "independent contractor/franchisee" and not employee of franchisor so plaintiff could not be employee vis-a-vis franchisor). Notably, those cases are in a different procedural posture from this one. In those cases, the courts granted summary judgment for the franchisor defendants because the record did not support plaintiffs' contentions that the franchisors were employers. See Reese, 2010 WL 5184841, at *4-5 (relying on terms of franchise agreement and affidavit provided by defendant which plaintiff failed to rebut to conclude franchisor defendant is not employer); Singh, 2007 WL 715488, at *3-6 (examining franchise agreement and deposition testimony of plaintiffs and of owner of franchise where plaintiffs worked to conclude franchisor defendant is not employer); Donovan, 566 F. Supp. at 1019 (concluding franchisors defendants are not employers because evidence presented at trial established that they "do not have authority to and do not establish prices for [the franchises]; they do not establish employment or other business policies for [the franchises]; they do no establish standard menus or food prices for [the franchises]; they do not establish a standard physical appearance for [the franchises]; they do not control or dictate the hiring of operating managers for [the franchises]; and they do not control, dictate or otherwise interfere with each [franchise's] wide discretion in day-to-day operations, terms and conditions of employment, and policy decisions").

While these cases highlight the problems of proof that the

13

plaintiffs may ultimately face, at this stage the plaintiffs must plead only enough facts to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation marks omitted).   "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimaint is entitled to offer evidence to support the claims.'" Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F.Supp. 2d 321, 327 (S.D.N.Y. 2008) ("'[T]he office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir.2004))).

In Chen v. Domino's Pizza, Inc., No. 09-107, 2009 WL 3379946, at *4 (D.N.J. Oct. 16, 2009), the complaint against the franchisor defendant was dismissed because it "simply ma[de] the conclusory statement that [the franchisor defendant] is an employer 'within the meaning of [the FLSA]. . . . [and] fail[ed] to make any specific allegations against [the franchisor defendant] to support this contention." On the other hand, in Orozco v. Plackis, No. A-11-CV-703, 2012 WL 2577522, at *8 (W.D. Tex. July 3, 2012), a complaint against a franchisor defendant survived a motion to dismiss because it alleged that the franchisor "evaluates personnel performance, directs firing and hiring decisions, determines work assignments, and shares personnel with the [independently-owned

14

franchise at which the plaintiff worked]." Specifically, the complaint alleged that: (1) the franchisor defendant "made regular announced and unannounced visits [to the independently owned franchise store] . . . in which he monitored the work of all employees . . . and discussed in detail the performance of . . . employees"; (2) he "regularly discussed [customers' comments and complaints] with the individual owners and managers, giving instructions for improvement"; (3) he "possessed and exercised the authority to select and hire managers"; (4) he "selected and set up timekeeping systems used at each [franchise store] and trained each individual store owner or manager to use them"; (5) "[e]mployees who were trained at one of the locations owned by [the franchisor defendant] needed little or no additional training to work at another location and were paid the same rate"; and (6) "[m]ultiple [franchise stores] from time to time shared the service of the same employee." Id. at *2-3.

While the facts alleged in this case may not support joint employer status as strongly as those alleged in Orozco, the plaintiffs have pled enough to survive a motion to dismiss. Most compelling, they assert that the Proposed Defendants promulgated compensation policies (SAC, ¶ 55) and implemented them through the Domino's PULSE system which was used at the defendants' store and included a system of tracking hours and wages and retaining payroll records which was submitted to the Proposed Defendants for their review (SAC, ¶¶ 68-69). In addition, they allege that the Proposed Defendants created management and operation policies and practices

15

that were implemented at the defendants' store by providing materials for use in training store managers and employees, providing posters with directions on how employees perform tasks, requiring those who want to become franchise owners to have managed a store owned by the Proposed Defendants for at least a year (SAC, ¶ 64), and monitoring employee performance by means of required computer hardware and software (SAC, ¶¶ 62, 65). They also contend that the Proposed Defendants developed and implemented hiring policies such as systems for screening, interviewing, and assessing applicants for employment at all of their stores including the defendants' stores (SAC, ¶ 63) and that they had the right to inspect the defendants' stores to ensure compliance with all of their policies (SAC, ¶ 70), including those related to the day-to-day conditions of the plaintiffs' employment. (SAC, ¶¶ 62, 64-65). None of these factors is dispositive, but taken together, they provide enough for the plaintiffs to establish the Proposed Defendants' joint employer status for the purpose of a motion to amend.[2] Although the defendants and the Proposed Defendants object to the plaintiffs' characterization of the facts, the appropriate time to adjudicate such issues is on a motion for summary

---

[2] Since the NYLL's definition of employment is "nearly identical to the FLSA's . . . courts in this circuit [have] 'h[eld] that the New York Labor Law embodies the same standard for employment as the FLSA." Greathouse v. JHS Security, Inc., No. 11 Civ. 7845, 2012 WL 3871523, at *3 (S.D.N.Y. Sept. 7, 2012) (quoting Chen v. Street Beat Sportwear, Inc., 364 F. Supp. 2d 269, 278 (E.D.N.Y. 2005) (citing cases)). Therefore, having found the complaint to have alleged sufficient facts to support the Proposed Defendants' employer status under the FLSA for the purposes of an amendment, I find the same with regard to the Proposed Defendants' employer status under the NYLL.

judgement, when the plaintiffs have had an opportunity for discovery.

2.   <u>Undue Delay and Bad Faith</u>

The defendants also object to amendment on the grounds that there was an "inordinate delay" between the time that they claim they provided the plaintiffs with information regarding the Proposed Defendants -- weeks prior to the close of the opt-in process in July 2011 -- and when the motion was filed. (Def. Memo. at 7).   The plaintiffs contend that they received all of the necessary information regarding the Proposed Defendants only days before a September 20, 2011 settlement conference and that the defendants' tactics were responsible for the delay. (Reply Memorandum of Law in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint ("Reply Memo.") at 13-14; E-mail of Dominick C. Capozzola dated Sept. 16, 2011, attached as Exh. A to Declaration of Richard Blum dated Oct. 5, 2012 ("Blum Decl.")).

Delay, absent bad faith or prejudice, is not a sufficient basis for denying leave to amend.   <u>See</u> <u>Parker v. Columbia Pictures Industries</u>, 204 F.3d 326, 339 (2d Cir. 2000); <u>Block v. First Blood Associates</u>, 988 F.2d 344, 350 (2d Cir. 1993); <u>Richardson Greenshields Securities, Inc. v. Lau</u>, 825 F.2d 647, 653 n.6 (2d Cir. 1987); <u>Lawrence v. Starbucks Corp.</u>, No. 08 Civ. 3734, 2009 WL 4794247, at *3 (S.D.N.Y. Dec. 10, 2009); <u>In re Horizon Cruises Litigation</u>, 101 F. Supp. 2d 204, 215 (S.D.N.Y. 2000). Here, the delay was largely attributable to defendant DPNY, Inc. filing for Chapter 11 bankruptcy.   In February 2012, the plaintiffs notified

the Proposed Defendants their intention to add them to this action. (Letter of Karen Cacace dated Feb. 3, 2012 ("Cacace Letter"), attached as Exh. B to Blum Decl.).   After giving the Proposed Defendants an opportunity to respond, the plaintiffs requested permission from the Court to move to amend the complaint. (Letter of Hollis V. Pfitsch dated Feb. 9, 2012, attached as Exh. C to Blum Decl., at 2).   On March 7, 2012, defendant DPNY, Inc., filed for bankruptcy, <u>In re DPNY Inc.</u>, Chapter 11 Case No. 12-10935 (the "bankruptcy case"), and on March 20, 2012, this Court issued a stay as to the proceedings against defendant DPNY, Inc., and directed the plaintiffs to file any motion to amend the complaint by April 3, 2012.   The plaintiffs notified the Court that they intended to request a modification of the automatic stay issued by the bankruptcy court, and they were granted a 30 day extension. (Memorandum Endorsement dated  April 4, 2012).  On April 26, 2012, the bankruptcy court modified the stay to permit the plaintiffs to file this motion (Order Granting Motion of Cano, et al. for Limited Relief from the Automatic Stay dated April 26, 2012, attached as Exh. D. to Blum Decl.), and the plaintiffs then filed this motion. While the plaintiffs' motion was filed in May 2012, they gave notice of their intention to amend the complaint in February 2012. Therefore, assuming that the plaintiffs had information about the Proposed Defendants by approximately July 2011, the plaintiffs waited seven months to seek leave to amend the complaint.

The defendants cite <u>McCarthy v. Dun and Bradstreet Corp</u>, 482 F.3d 184, 202 (2d Cir. 2007), for the proposition that a delay of

seven months or more is an "inordinate delay." (Def. Memo. at 7). However, in McCarthy, discovery was already closed and the defendants had filed for summary judgment by the time the plaintiffs sought to amend the complaint to add an entirely new claim. 482 F.3d at 201-02; see also Dilworth v. Goldberg, ___ F. Supp. 2d ___, 2012 WL 4017789, at *23 (S.D.N.Y. 2012) (finding no prejudicial delay in granting amendment over one year after second amended complaint was filed because discovery had not substantially progressed, and distinguishing cases where discovery was already completed). Accordingly, because discovery is far from complete in this case and the Proposed Defendants were on notice since February 2012 that they would be added as defendants to this case, I find no undue delay.

   3.   Prejudice

   The defendants claim that they will be prejudiced if amendment is permitted because it may obligate them to defend and indemnify the Proposed Defendants, which would violate the automatic stay in the bankruptcy case. (Def. Memo. at 7). The Second Circuit has explained that "a suit against a codefendant is not automatically stayed by the debtor [defendant]'s bankruptcy filing." Queenie, Ltd. v. Nygard International, 321 F.3d 282, 287 (2d Cir. 2003) (internal quotation marks omitted); DeSouza v. PlusFunds Group, Inc., No. 05 Civ. 5990, 2006 WL 2168478, at *2 (S.D.N.Y. Aug. 1, 2006) ("The plain language of [11 U.S.C.] § 362(a)(1) limits the extension of an automatic stay to a proceeding against the debtor, and courts will generally not extend the automatic stay of

19

proceeding pursuant to § 362(a)(1) to non-debtor co-defendants."
(internal quotation marks and citations omitted)). While there are
"unusual situations" when a court is empowered to extend the
automatic stay to non-bankrupt co-defendant of the debtor, "where
the debtor and non-debtor co-defendant are joint tortfeasors or
where the non-debtor's liability rests upon his own breach of duty,
a stay clearly cannot be extended to the non-debtor." Variable-
Parameter Fixture Development Corp. v. Morpheus Lights, Inc., 945
F. Supp. 603, 608 (S.D.N.Y. 1996) (internal quotation marks
omitted); DeSouza, 2006 WL 2168478, at *3 (declining to extend stay
to non-debtor codefendants who may be indemnified by debtor
defendant because their liability could rest upon their own
breaches of duty). Here, the plaintiffs allege that the Proposed
Defendants are joint employers and, therefore, are jointly and
severally liable to the plaintiffs for violations of the FLSA and
NYLL. Accordingly, the automatic stay in the bankruptcy case would
not extend to the Proposed Defendants and allowing the amendment
would not violate the automatic stay.

     The defendants and the Proposed Defendants further contend
that the Proposed Defendants will be prejudiced because they did
not have an opportunity to contest the conditional collective
action certification and the opt-in process. (Def. Memo. at 7-8;
Proposed Def. Memo. at 15). Yet, they do not suggest how the
Proposed Defendants might have made different arguments than those
that were available to the defendants. Similarly, the Proposed
Defendants argue that allowing amendment would necessarily require

re-opening the class certification. (Proposed Def. Memo. at 15). However, only conditional certification of the collective action has been granted, and as the plaintiffs point out, the Proposed Defendants will have an opportunity to seek decertification of the collective action and oppose class certification if and when the plaintiff moves. (Reply Memo. at 15).

The defendants also assert prejudice on the ground that the Proposed Defendants may have to bear the plaintiffs' fees without an opportunity to attempt to settle the case beforehand. (Def. Memo. at 7). However, in a letter dated February 3, 2012, the plaintiffs notified the Proposed Defendants about their intention to add them as defendants and invited them to discuss settlement. (Cacace Letter). According to the plaintiffs, the Proposed Defendants did not respond. (Reply Memo. at 14).

Finally, as the plaintiffs point out, this case is still in the early stages of litigation; formal discovery has not begun and the Proposed Defendants will still have an opportunity to seek de-certification of the collective action and oppose class certification. (Memorandum of Law in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint at 5; Reply Memo. at 15).

In short, the defendants have failed to demonstrate prejudice.

<u>Conclusion</u>

For the foregoing reasons, the plaintiffs' motion for leave to file a second amended complaint (Docket no. 88) is granted.

21

SO ORDERED.

_____
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:      New York, New York
            November 8, 2012

Copies mailed this date:

Steven R. Banks, Esq.
Adriene L. Holder, Esq.
Karen Cacace, Esq.
Richard E. Blum, Esq.
Hollis V. Pfitsch, Esq.
The Legal Aid Society, Civil Division
199 Water Street, 3rd Floor
New York, New York  10038

Cheryl M. Stanton, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, PC
1745 Broadway, 22nd Floor
New York, NY 10019

Dominick C. Capozzola, Esq.
Rodney A. Harrison, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, PC
10 Madison Avenue, Suite 400
Morristown, NJ  07960

Christopher Kendric, Esq.
Goldberg Segalla LLP
100 Garden City Plaza, Suite 225
Garden City, NY 11530