Steven R. Banks
Adriene L. Holder
Karen Cacace
Richard E. Blum
Hollis V. Pfitsch
THE LEGAL AID SOCIETY
Employment Law Unit
199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3465 (phone)
*Attorneys for Plaintiffs*

Adam S. Hakki
John A. Nathanson
Darren Ishmael
Mojoyin Onijala
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069
(212) 848-4000 (phone)
*Of Counsel*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Gil Santiago Cano, Hector Hernandez Zavala, Juan
Hernandez Zavala, Omar Hernandez Zavala, Aristeo
Basurto, Carlos Rodriguez Herrera, Leonardo Juarez,
Saul Isidro, Aboubacar Gouem, and Anatole Yameogo
on behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

Domino's Pizza Inc., Domino's Pizza LLC, Domino's
Pizza Franchising LLC, DPNY, Inc. d/b/a Domino's
Pizza, BMW Pizza, Inc. d/b/a Domino's Pizza, David I.
Melton, Angelina M. Melton, Zia Shah, Shaik Shamin,
Mohammed Patwary, and Mohammed Mannaf, a/k/a
Muktar,

Defendants.



RECEIVED DEC 0 5 2012 U.S.D.C. S.D. N.Y. CASHIERS

**No. 10 Civ. 7100 (ALC) (JCF)**

**SECOND AMENDED**
**COLLECTIVE/CLASS**
**ACTION COMPLAINT**

Plaintiffs Gil Santiago Cano, Hector Hernandez Zavala, Juan Hernandez Zavala, Omar Hernandez Zavala, Aristeo Basurto, Carlos Rodriguez Herrera, Leonardo Juarez, Saul Isidro, Aboubacar Gouem, and Anatole Yameogo (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys The Legal Aid Society and Shearman & Sterling LLP, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE CASE

1.     This action seeks redress for violations of the federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). In a fundamental breach of their statutory obligations, Domino's Pizza Inc., Domino's Pizza LLC, and Domino's Pizza Franchising LLC ("Corporate Domino's Defendants"); DPNY, Inc. d/b/a Domino's Pizza,[1] BMW Pizza, Inc. d/b/a Domino's Pizza ("Franchise Corporate Defendants"); David L. Melton, Angelina M. Melton ("Melton Defendants" and, together with Franchise Corporate Defendants, "Franchise Defendants"); Zia Shah, Shaik Shamin, Mohammed Patwary, and Mohammed Mannaf, a/k/a Muktar[2] ("Manager Defendants") (all collectively, "Defendants"), all of which operate a chain of franchise locations ("Domino's Pizza Locations") doing business as Domino's Pizza, have willfully engaged in various unlawful employment policies, patterns and/or practices.

---

[1] On March 7, 2012, DPNY, Inc. initiated Chapter 11 bankruptcy proceedings. U.S. Bankruptcy Court, Southern District of New York, Bankruptcy Petition, No. 12-10935, Mar. 7, 2012, ECF No. 1. Therefore, any action against DPNY in this proceeding is stayed as of March 20, 2012. Order of Stay, 10 Civ. 7100, Mar. 20, 2012, ECF No. 85. Nothing in this Second Amended Complaint is intended or should be construed as taking action with respect to claims against DPNY, Inc. On April 26, 2012, United States Bankruptcy Judge James Peck entered an order in *In re DPNY, Inc.*, Chapter 11 Case No. 12-10935 (JMP), Apr. 26, 2012, ECF No. 69, providing that the automatic stay in that action is modified to the extent necessary to permit plaintiffs in this action to move to amend the complaint, and if the District Court grants the motion, to file the amended complaint.

[2] In Defendants' Answer, 10 Civ. 7100, Feb. 16, 2011, ECF No. 24, at ¶ 28, Defendants provided the correct last name and spelling for Mohammed Mannaf, therefore Plaintiffs have corrected the caption and spelling herein.

2.     Franchise and Manager Defendants run several sites that prepare and sell pizzas for takeout and delivery and eating on the premises.

3.     Franchise Corporate Defendants are franchised to operate Domino's Pizza Stores using the "Domino's System" by Corporate Domino's Defendants.

4.     Plaintiffs are or were employees of Defendants who at all relevant times performed a variety of duties at Defendants' Domino's Pizza locations, including food preparation, cleaning the facilities, and delivering pizzas and other food orders.

5.     Franchise and Manager Defendants have maintained an unlawful policy, pattern and/or practice of paying less than the full minimum wage rate as defined by the FLSA and NYLL, failing to pay the required overtime rate as defined by the FLSA and NYLL, and failing to pay for some hours altogether by refusing and/or failing to record all of the time that Plaintiffs and similarly situated employees employed in Defendants' Domino's Pizza locations work or worked, including time that they work or worked in excess of forty hours per work week. Upon information and belief, pursuant to this unlawful policy, pattern and/or practice, Franchise and Manager Defendants have shaved time from time records. Upon information and belief, Corporate Domino's Defendants knew or should have known of work performed by Plaintiffs and similarly situated employees, and/or knew or should have known of the unlawful policies, patterns and/or practices, including the time shaving; and upon information and belief, Corporate Domino's Defendants had the power to stop the work and/or the violations, but did not do so.

6.     Franchise and Manager Defendants have maintained an unlawful policy, pattern and/or practice of paying less than the full minimum wage rate as defined by the FLSA and NYLL, failing to pay the required overtime rate as defined by the FLSA and NYLL, and failing to pay for some hours altogether by requiring Plaintiffs and similarly situated employees to work

substantial periods of time "off the clock," and prohibiting them from reporting all of their hours. Upon information and belief, Corporate Domino's Defendants knew or should have known of work performed by Plaintiffs and similarly situated employees, and/or knew or should have known of the unlawful policies, patterns and/or practices, including the off-the-clock work; and upon information and belief, Corporate Domino's Defendants had the power to stop the work and/or the violations, but did not do so.

7.      Franchise and Manager Defendants have maintained an unlawful policy, pattern and/or practice of paying Plaintiffs and similarly situated employees less than the full minimum wage rate as defined by the FLSA and NYLL, by paying the reduced hourly wage for tipped employees (hereafter, "tipped wage") for all hours paid, even though these Defendants require Plaintiffs to spend over twenty percent of their time performing work that is unrelated to performing deliveries, including general food preparation, cleaning, and/or maintenance work, from which they do not earn tips. Pursuant to this unlawful policy, pattern and/or practice, these Defendants have also failed to inform Plaintiffs and similarly situated employees of the requirements for an employers' use of tipped wage as required by the FLSA and NYLL. Upon information and belief, Corporate Domino's Defendants know or should know of work performed by Plaintiffs and similarly situated employees, and/or know or should know of the unlawful policies, patterns and/or practices, including the improper use of the tip credit; and upon information and belief, Corporate Domino's Defendants had the power to stop the work and/or the violations, but did not do so.

8.      Franchise and Manager Defendants have maintained an unlawful policy, pattern and/or practice of paying Plaintiffs and similarly situated employees less than the full minimum wage rate as defined by the FLSA and NYLL by requiring Plaintiffs and similarly situated

employees to purchase company-issued uniforms, failing to and/or refusing to compensate Plaintiffs for the laundering of those uniforms. and at times taking illegal deductions from Plaintiffs' wages for the cost of the uniforms. These illegal deductions are also an independent violation of state law, regardless of their impact on the minimum wage rate. Upon information and belief, Corporate Domino's Defendants knew or should have known of work performed by Plaintiffs and similarly situated employees, and/or knew or should have known of the unlawful policies. patterns and/or practices, including the illegal deductions related to uniforms; and upon information and belief, Corporate Domino's Defendants had the power to stop the work and/or violations. but did not do so.

9.      Franchise and Manager Defendants have maintained an unlawful policy, pattern and/or practice of paying Plaintiffs and similarly situated employees less than the full minimum wage rate as defined by the FLSA and NYLL by requiring Plaintiffs and similarly situated employees to purchase and utilize bicycles as transportation for making deliveries and failing to and/or refusing to compensate Plaintiffs for the purchase and maintenance costs of these bicycles, which are tools of the trade. These illegal deductions are also an independent violation of state law, regardless of their impact on the minimum wage rate. Upon information and belief. Corporate Domino's Defendants knew or should have known of work performed by Plaintiffs and similarly situated employees, and/or knew or should have known of the unlawful policies, patterns and/or practices, including the illegal deductions related to tools of the trade; and upon information and belief, Corporate Domino's Defendants had the power to stop the work and/or violations, but did not do so.

10.     Franchise and Manager Defendants have maintained an unlawful policy, pattern and/or practice of failing to compensate Plaintiffs and similarly situated employees with an extra

hour's pay at the minimum wage rate on days in which they work an interval of more than ten hours ("spread-of-hours pay") as required by the NYLL. Upon information and belief, Corporate Domino's Defendants knew or should have known of work performed by Plaintiffs and similarly situated employees, and/or knew, or should have known of, the unlawful policies, patterns and/or practices, including the failure to pay spread-of-hours pay; and upon information and belief, Corporate Domino's Defendants had the power to stop the work and/or violations, but did not do so.

11.      Franchise and Manager Defendants have maintained an unlawful policy, pattern and/or practice of routinely denying Plaintiffs and similarly situated employees the right to take the meal and rest breaks required by the NYLL, that is, a thirty-minute break period for employees who work shifts of more than six hours that extend over the noonday meal period, nor the additional twenty minutes between 5 p.m. and 7 p.m. for those employed on a shift starting before 11 a.m. and continuing after 7 p.m. Upon information and belief, Corporate Domino's Defendants knew or should have known of work performed by Plaintiffs and similarly situated employees, and/or knew or should have known of the unlawful policies, patterns and/or practices, including the failure to provide required breaks; and upon information and belief, Corporate Domino's Defendants had the power to stop the work and/or violations, but did not do so.

12.      Franchise and Manager Defendants have maintained an unlawful policy, pattern and/or practice of failing to inform Plaintiffs and similarly situated employees of the requirements of the employment laws as required by the FLSA and NYLL by, *inter alia,* failing to post the notices required by the FLSA and NYLL and/or failing to inform employees of the requirements for an employers' use of the tip credit. Upon information and belief, Corporate

Domino's Defendants knew or should have known of work performed by Plaintiffs and similarly situated employees, and/or knew or should have known of the unlawful policies, patterns and/or practices, including the failure to post the required notices; and upon information and belief, Corporate Domino's Defendants had the power to stop the work and/or violations, but did not do so.

13.     Franchise and Manager Defendants maintained an unlawful policy, pattern and/or practice of retaliating against Plaintiffs who engaged in activities protected under the FLSA and/or the NYLL by selectively reducing schedules and/or terminating and/or constructively discharging those Plaintiffs, thereby chilling protected activity by similarly situated employees.

14.     By the conduct described in this Complaint, Defendants willfully committed widespread violations of the FLSA, 29 U.S.C. §§ 201 *et seq.* and supporting regulations, and the NYLL §§ 190, 650 *et seq.* and supporting regulations.

15.     At least one of Defendants' practices, described in this Complaint, is ongoing, and the policies, patterns and/or practices described herein have affected, and continue to affect, past and current employees.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b).

17.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs have consented in writing to become parties to this lawsuit. Plaintiffs' written consent forms are attached to the First Amended Complaint, ECF No. 23.

18.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because these claims are so closely related to Plaintiffs' claims under the FLSA that they form part of the same case or controversy.

19.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

20.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district and because one or more of the defendants, either resides in or maintains executive office in this District. Finally, Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that have had an effect in this District.

## PARTIES

### Owner/Operator Defendants

21.     Defendant David L. Melton and his wife, Angelina M. Melton ("the Melton Defendants"), are the owners and/or operators of several Domino's Pizza franchise locations.

22.     Four of the Domino's Pizza franchise locations owned and/or operated by the Melton Defendants are located at: 200 E. 89th Street, New York, NY (cross-street Third Avenue), 464 Third Avenue, New York, NY (cross-street E. 32nd St.), 1396 First Avenue, New York, NY (cross-street 74th St.), and 592 Columbus Avenue, New York, NY (cross-street 89th St.) ("the Defendants' Domino's Pizza locations").

23.     At all relevant times, Defendants' Domino's Pizza locations have been engaged in commerce or in an industry or activity affecting commerce in an enterprise with annual gross volume sales made or business done of not less than $500,000.

24.     On his website: http://www.hiretheamericandream.com/MeetDaveMelton.html, David Melton states "My wife and I are the proud owners of six Domino's Pizza stores. Our four New York City stores are among the top in the country, each exceeding $1 million in annual sales in the world's most competitive pizza market."

## Manager Defendants

25.     Upon information and belief, Defendant Zia Shah is or was at relevant times a Manager of Defendants' Domino's Pizza 592 Columbus Avenue location.

26.     Upon information and belief, Defendant Shaik Shamin is or was at relevant times a Manager of Defendants' Domino's Pizza 200 E. 89th Street location and is a former Manager of Defendants' Domino's Pizza 464 Third Avenue location.

27.     Upon information and belief, Defendant Mohammed Patwary is or was at relevant times a Manager of Defendants' Domino's Pizza 1396 First Avenue location and is a former Manager of Defendants' Domino's Pizza 200 E. 89th Street location.

28.     Upon information and belief, Defendant Mohammed Mannaf, a/k/a Muktar, is or was at relevant times a Manager of Defendants' Domino's Pizza 464 Third Avenue location.

## Franchise Corporate Defendants

29.     DPNY, Inc. is a domestic business corporation registered as doing business in New York with its official office listed as 56 East 87th Street, Apt. 2B, New York, NY.

30.     David L. Melton ("Defendant Dave Melton") is the President of DPNY, Inc.

31.     Angelina M. Melton ("Defendant Angie Melton") is the Franchise Administrator of DPNY, Inc.

32.     Upon information and belief, DPNY, Inc. is doing business as Domino's Pizza at all of the Defendants' Domino's Pizza Locations.

33.     DPNY, Inc. is listed on Plaintiffs' paystubs and other documents from the Defendants' Domino's Pizza locations.

34.     DPNY, Inc., at all relevant times, has been engaged in commerce or in an industry or activity affecting commerce in an enterprise with annual gross volume sales made or business done of not less than $500,000.

35.     Upon information and belief, DPNY, Inc., at all relevant times, has been engaged in commerce within the meaning of 29 U.S.C. § 203(b).

36.     BMW Pizza, Inc. was a domestic business corporation registered as doing business in New York with its official office listed as 56 East 87th Street, Apt. 2B, New York, NY until February 19, 2002, at which time BMW Pizza, Inc. merged with DPNY, Inc. Though the corporation was inactive as of 2002, the BMW Pizza name still appears on documents Plaintiffs have received and/or observed.

37.     Defendant Dave Melton was the President of BMW Pizza, Inc.

38.     Defendant Angie Melton was the Franchise Administrator of BMW Pizza, Inc.

39.     Upon information and belief, prior to February 2002, BMW Pizza, Inc. was doing business as Domino's Pizza at a number of or all of the Defendants' Domino's Pizza locations.

40.     Upon information and belief, DPNY, Inc. and BMW Pizza, Inc. perform related activities through common control for a common business purpose and therefore together constitute an enterprise as defined by the FLSA. 29 U.S.C. § 203(r)(1).

41.     For example, upon information and belief, Defendants' Domino's Pizza locations have common policies and procedures, interchange personnel, are operationally interdependent, and use a centralized and/or joint administrative structure.

**Corporate Domino's Defendants**

42.     Upon information and belief, Defendant Domino's Pizza, Inc. is a domestic business corporation incorporated in Delaware, with its principal executive offices listed as 30 Frank Lloyd Wright Dr., Ann Arbor, Michigan.

43.     According to its website, Domino's Pizza, Inc. "is the recognized world leader in pizza delivery operating a network of company-owned and franchise-owned stores in the United States and international markets." http://www.dominosbiz.com/Biz-Public-EN/Site-Content/Secondary/About-Dominos/. Upon information and belief, Domino's Pizza, Inc. does business in New York through two corporations registered to do business in New York State, Domino's Pizza LLC and Domino's Pizza Franchising LLC, among others.

44.     Upon information and belief, Defendant Domino's Pizza LLC (a/k/a Domino's Pizza I LLC), is a subsidiary of Domino's Pizza, Inc. It is a limited liability corporation that is organized and existing under the laws of the State of Michigan with its principal place of business located at 30 Frank Lloyd Wright Dr., Ann Arbor, Michigan. Domino's Pizza LLC is authorized by the Secretary of State of the State of New York to do business in this state.

45.     Upon information and belief, Defendant Domino's Pizza Franchising LLC, is a subsidiary of Domino's Pizza Inc. It is a limited liability corporation that is organized and existing under the laws of the State of Michigan with its principal place of business located at 30 Frank Lloyd Wright Dr., Ann Arbor, Michigan. Domino's Pizza LLC is authorized by the Secretary of State of the State of New York to do business in this state.

46.     Upon information and belief, on behalf of Defendant Domino's Pizza, Inc., Defendant Domino's Pizza LLC and Defendant Domino's Pizza Franchising LLC grant

franchises to operate Domino's Pizza Stores in New York under the Domino's System and grant sublicenses to franchisees to use the Domino's Pizza trademarks.

47.     Upon information and belief, the Corporate Domino's Defendants are all "employers" of Plaintiffs and similarly situated employees within the meaning of 29 U.S.C. § 203 and the New York Labor Law, sections 2(7) and 190(2).

48.     Upon information and belief, Corporate Domino's Defendants perform related activities through common control for a common business purpose and therefore constitute a single "enterprise" within the meaning of 29 U.S.C. § 203.

49.     Upon information and belief, at all relevant times, Corporate Domino's Defendants were engaged in commerce or in an industry or activity affecting commerce in an enterprise with annual gross volume sales made or business done of not less than $500,000.

## Role of Defendants as Employers

50.     At relevant times, and as a matter of economic reality, Defendants were employers of Plaintiffs within the meaning of the FLSA and the NYLL.

51.     At relevant times, and as a matter of economic reality, Plaintiffs were employees of Defendants within the meaning of the FLSA and the NYLL.

52.     The Defendants employed and/or jointly employed Plaintiffs and similarly situated employees within the meaning of the FLSA and NYLL.

53.     Facts which demonstrate that Corporate Domino's Defendants were Plaintiffs' employers include:

- Defendants all suffered or permitted Plaintiffs and similarly situated employees to work.

- Each of the Defendants acted directly or indirectly in the interest of one another in relation to Plaintiffs and similarly situated employees.

- Defendants each have an economic interest, of varying types, in the Domino's Pizza locations in which Plaintiffs and similarly situated employees work.

- Defendants all simultaneously benefited from Plaintiffs' work.

- Defendants each had either functional and/or formal control over terms and conditions of work of Plaintiffs and similarly situated employees.

- Plaintiffs and similarly situated employees performed work integral to each Defendant's operation.

54.     The Melton Defendants directed the operation of Corporate Franchise Defendants and exercised operational and financial control of all Defendants' Domino's Pizza locations.

55.     The Melton Defendants and Corporate Franchise Defendants promulgated the employment policies, including compensation policies, for Defendants' Domino's Pizza Locations.

56.     Upon information and belief, the Melton Defendants and Manager Defendants implemented the employment policies of the Corporate Franchise Defendants, including compensation policies for Defendants' Domino's Pizza Locations.

57.     Upon information and belief, the Melton Defendants controlled and had the right to control Plaintiffs and similarly situated employees at each of Defendants' Domino's Pizza Locations and had the power to hire and fire Plaintiffs and similarly situated employees, control the terms and conditions of their employment, determine rates and methods of compensation provided to Plaintiffs and similarly situated employees, withhold Plaintiffs' and similarly

situated employees' compensation, maintain employment records, and comply with regulations of governmental agencies.

58. For example, Defendant Dave Melton and Defendant Angie Melton had direct interaction with employees of the Defendants' Domino's Pizza locations. The Melton Defendants, *inter alia*, gave out bonuses, held meetings and gave trainings to both managers and hourly employees. Defendant Dave Melton, *inter alia*, pointed out standards violations when he visited the locations, and hired and trained Managers, who then hired and trained his employees.

59. Upon information and belief, under the supervision of the Melton Defendants, the Manager Defendants controlled and had the right to control Plaintiffs and similarly situated employees at Defendants' Domino's Pizza locations and had the power to hire and fire Plaintiffs and similarly situated employees, control the terms and conditions of their employment, determine rates and methods of compensation provided to Plaintiffs and similarly situated employees, withhold Plaintiffs' and similarly situated employees' compensation, maintain employment records, and comply with regulations of governmental agencies.

60. Upon information and belief, Corporate Domino's Defendants run a pizza delivery business dependent on its franchise and corporate-owned stores selling and delivering pizzas under a prescribed model. As such, upon information and belief, Plaintiffs' work as workers who deliver pizzas and perform other duties within this model is integral to Corporate Domino's Defendants' operation. As set forth in forth in the Annual Report of Domino's Pizza, Inc., for the fiscal year ended January 1, 2012 ("Annual Report")[3], at 4, "We have developed a large, global, diversified and committed franchise network that is a critical component of our system-wide success and our leading position in pizza delivery." The "business strategy of

---

[3] Available at http://phx.corporate-ir.net/phoenix.zhtml?c=135383&p=irol-
SECText&TEXT=aHR0cDovL2lyLmludGC53ZXN0bGF3YnVzaW5lc3MuY29tL2RvVY3VtZW50L3xLz
AwMDExOTExMjUtMTItMDgzMTkzL3htbA%3d%3d.

Corporate Domino's Defendants "puts franchisees and Company-owned stores at the foundation of all our thinking and decisions . . . [and] provides a strong infrastructure to support our stores." Annual Report at 5.

61.    Upon information and belief, Corporate Domino's Defendants coordinate certain customer service functions for all stores, corporate and franchise owned.  For example, food orders for any Domino's store, whether franchise or corporate owned, can be tracked on Corporate Domino's Defendants' website, www.dominos.com, through its Pizza Tracker function.  Also, upon information and belief, food orders can be made on the same website through an online ordering function which does not distinguish between corporate or franchise-owned stores.

62.    Upon information and belief, Corporate Domino's Defendants has maintained control over many aspects of Franchise Defendants' operation.  For example, Corporate Domino's Defendants requires that all food products, supplies, and materials for the operation of Franchise Defendants met the specifications set by Corporate Domino's Defendants.  These products, supplies, and materials include but are not limited to food ingredients, beverages, forms, menus, cleaning materials, containers, and receipt templates, as well as materials directly related to Plaintiffs' work, such as uniforms, delivery vehicles, and computer hardware and software used, *inter alia*, to track delivery times and employees' work hours.

63.    Upon information and belief, Corporate Domino's Defendants were involved in development and implementation of hiring and management policies in all corporate-owned and franchise stores.  For example, in his forward to Dave Melton's book, *Hire the American Dream*, Chairman and then C.E.O. of Domino's Pizza Inc., David A. Brandon, describes reducing the employee turnover rate throughout the corporate-owned and franchise system by developing

systems for screening, interviewing, and assessing applicants for employment that were used in both corporate-owned and franchise stores.

64.     Upon information and belief, the management and operation policies and practices created by Corporate Domino's Defendants have been taught and implemented throughout their system, including the franchises. As set forth in the Annual Report at 11, "under the standard domestic franchise agreement, domestic franchisees are required to implement training programs for their store employees." Corporate Domino's Defendants provide training materials for use in training store managers and other employees. Upon information and belief, Corporate Domino's Defendants provide posters for both corporate and franchise stores giving direction to employees as to how to perform their jobs. Generally, before becoming a franchise owner, a person must have managed a Domino's Pizza store for at least a year. Annual Report at 10.

65.     Upon information and belief, through its franchise agreements and in other ways, the Corporate Domino's Defendants set requirements for the operation of Franchise Defendants and enforced those requirements, in particular, requirements related to the work of Plaintiffs and similarly situated employees. These requirements include but are not limited to: setting the delivery areas of Plaintiffs and other similarly situated employees; monitoring the delivery times of deliveries performed by Plaintiffs and other similarly situated employees; specifying equipment, uniforms and supplies for the use of Plaintiffs and other similarly situated employees; and specifying the methods and procedures Plaintiffs and other similarly situated employees use in preparing and delivering customer orders.

66.     Upon information and belief, through these requirements, Corporate Domino's Defendants had the authority and exercised the authority to control, directly or indirectly, the work of Plaintiffs and similarly situated employees.

67.     Upon information and belief, Corporate Domino's Defendants provide computer programs to track performance of employees in Domino's Pizza stores world-wide, both corporate and franchise-owned including but not limited to programs that track the beginning and end times of each delivery by worker.

68.     Upon information and belief, the Corporate Domino's Defendants had the authority to and did require that Franchise Defendants use certain recordkeeping systems for the operation of Franchise Defendants, including systems for tracking hours and wages and for retaining payroll records. Upon information and belief, since in or around 2007 or 2008, Corporate Domino's Defendants had the authority to and did require Franchise Defendants to use a trademarked computerized recordkeeping system called Domino's PULSE ("PULSE"). PULSE is a proprietary point-of-sale system that provides corporate management with timely access to data about the administration of the stores. Domino's Corporate Defendants require its domestic franchisees to install and maintain PULSE and, as of the Annual Report, it as been installed in 98% of domestic franchise stores. Annual Report at 8. Upon information and belief, the recordkeeping system required by the Corporate Domino's Defendants was an instrumentality through which unlawful policies, patterns, and/or practices at issue in this case were implemented.

69.     Upon information and belief, Corporate Domino's Defendants required that the Franchise Defendants retain for review and/or submit certain information collected by the systems referred to in the previous paragraph, and other required record-keeping systems, on a

regular basis, and monitored the information therein. Furthermore, Corporate Domino's Defendants required full access to and reserved the right to audit or cause to be audited all records that Franchise Defendants were required to retain or submit for review, including, but not limited to, timekeeping and payroll records.

70.    Upon information and belief, Corporate Domino's Defendants had the right to inspect the facilities and operations of Franchise Defendants.

71.    Upon information and belief, Corporate Domino's Defendants had the authority and exercised the authority to control, directly or indirectly, the timekeeping and payroll practices of Franchise Defendants.

72.    Upon information and belief, Corporate Domino's Defendants knew or should have known of, and had the authority to exercise control over, the accuracy of records concerning the hours and wages of Plaintiffs and similarly situated employees through the monitoring of information contained in the required record-keeping systems, among other means.

73.    Upon information and belief, Corporate Domino's Defendants knew or should have known of Franchise Defendants' unlawful wage-and-hour policies, patterns, and/or practices through the monitoring of information contained in the required record-keeping systems, among other means. Upon information and belief, a comparison of payroll records, delivery times with clock-in and clock-out times and the total times that Plaintiffs and similarly situated employees were "on-the-clock," would have revealed many of the violations at issue in this Amended Complaint and would have raised questions about the accuracy of records maintained by Franchise Defendants and relied on to pay Plaintiffs and similarly situated employees. For example, the time-shaving and amount of non-tipped work performed by

Plaintiffs and similarly situated employees could both be ascertained in this manner. Additional violations were obvious from the face of the payroll records themselves in either their inclusion, such as illegal deductions for uniforms, or in their absence, for example, failure to reimburse for vehicle maintenance.

74.     Upon information and belief, Corporate Domino's Defendants knew of allegations of unlawful wage-and-hour policies, patterns, and/or practices in both Corporate and Franchise-owned Domino's stores around New York City because of several lawsuits raising claims very similar to those in this case, for example, *Laroque v. Domino's Pizza LLC*, 06 Civ. 6387, brought in U.S. District Court, in the Eastern District of New York.  In addition, a complaint of similar wage violations was filed against the Franchise Defendants with the New York State Department of Labor in 2007.

75.     Moreover, the Annual Report, at 13, acknowledges that Corporate Domino's Defendants are "subject to the Fair Labor Standards Act and various other federal and state laws governing such matters as minimum wage requirements, overtime and other working conditions . . ." It further notes that a "significant number of our food service personnel are paid at rates related to the applicable minimum wage, and past increases in the minimum wage have increased our labor costs, as would future increases." *Id*. Thus, Corporate Domino's Defendants have been aware that failure to pay food service personnel their full wages could result in sub-minimum wage payments or violations of other wage and hour laws.

76.     Upon information and belief, Corporate Domino's Defendants have had the power to stop the Franchise Defendants' unlawful wage and hour policies, patterns, and/or practices, but have not done so.

77.     Corporate Domino's Defendants could have terminated the franchise agreements of Franchise Defendants and caused Franchise Defendants to cease operation of the franchise stores as pizza carry-out or delivery stores, under certain circumstances, including in the event of violations of law and other conduct that adversely affected the good will of the trademarks, service marks or symbols of Domino's Pizza. The Annual Report, at 10, notes that "failure to adhere to specified Company policies and standards" is a reason for Corporate Domino's Defendants to terminate a franchise agreement. Thus, upon information and belief, Corporate Domino's Defendants have had the authority to stop violations of labor standards laws and, ultimately, to control the employment of Plaintiffs and similarly situated employees, including but not limited to, causing the termination of their employment. Moreover, Corporate Domino's Defendants have had the power to induce compliance with applicable wage and hour laws by threatening to terminate a franchise agreement.

78.     Franchise Defendants are required to pay royalties to Corporate Domino's Defendants under franchise agreements. Thus, Corporate Domino's Defendants' profits and financial well being depended upon the success of Franchise Defendants' sales and Corporate Domino's Defendants directly profited from off-the-clock delivery work that brought in more sales on which royalties had to be paid.

**Plaintiffs**

79.     Gil Santiago Cano is an adult individual residing in New York, NY, and has been employed by Defendants at Defendants' 200 E. 89th Street Domino's Pizza location from approximately October 2006 to present.

80.     Hector Hernandez Zavala is an adult individual residing in Bronx, NY, and has been employed by Defendants at Defendants' 200 E. 89th Street Domino's Pizza location from approximately September 2008 to 2012.

81.    Juan Hernandez Zavala is an adult individual residing in Bronx, NY, and has been employed by Defendants at Defendants' 200 E. 89th Street Domino's Pizza location from approximately June 2006 to February 2010, and has also worked for short periods at Defendants' 592 Columbus Avenue Domino's Pizza location.

82.    Omar Hernandez Zavala is an adult individual residing in Bronx, NY, and has been employed by Defendants at Defendants' 200 E. 89th Street Domino's Pizza location from approximately November 2007 to July 2010.

83.    Aristeo Basurto is an adult individual residing in New York, NY, and has been employed by Defendants at Defendants' 200 E. 89th Street Domino's Pizza location from approximately February 2007 to present.

84.    Carlos Rodriguez Herrera is an adult individual residing in Bronx, NY, and was employed by Defendants at Defendants' 200 E. 89th Street Domino's Pizza location from approximately August 2005 to approximately February 2007.

85.    Leonardo Juarez is an adult individual residing in New York, NY, and was employed by Defendants at Defendants' 200 E. 89th Street Domino's Pizza location from approximately January 2007 to approximately November 2007.

86.    Saul Isidro is an adult individual residing in Queens, New York, and was employed by Defendants at Defendants' 464 Third Avenue Domino's Pizza location from approximately November 2006, to approximately March 2008, and was thereafter employed by Defendants at Defendants' 200 E. 89th Street Domino's Pizza location from approximately March 2008, to approximately July 2010.  Mr. Isidro also sometimes worked at Defendants' 592 Columbus Avenue and 1396 First Avenue Domino's Pizza locations.

87.     Aboubacar Gouem is an adult individual residing in Bronx, New York, and was employed by Defendants at Defendants' 464 Third Avenue Domino's Pizza location from approximately May 2004, to approximately August 2009, was thereafter employed by Defendants at both Defendants' 464 Third Avenue Domino's Pizza location and Defendants' 200 E. 89th Street Domino's Pizza location from approximately September 2009 to approximately April 2010, and was thereafter employed by Defendants at Defendants' 200 E. 89th Street Domino's Pizza location from approximately May 2010 to approximately September 2010.

88.     Anatole Yameogo is an adult individual residing in Bronx, NY, and was employed by Defendants at Defendants' 200 E. 89th Street Domino's Pizza location from approximately January 2005 to approximately April 2009.

## PLAINTIFFS' WORK

89.     Franchise and Manager Defendants have required Plaintiffs to perform various duties, including but not limited to cleaning the store; sweeping; mopping; washing ceilings and walls; washing windows, both the inside and outside glass; washing other glass surfaces; making repairs; fixing plumbing stoppages; replacing lightbulbs; cleaning ovens; cleaning the bathroom; taking the pizza-makers' uniforms to the laundromat and picking those uniforms up from the laundromat; handing food such as dough and toppings to workers who prepare pizzas; preparing salad by, for example, cutting tomatoes and other vegetables; preparing sauces and cheeses; arranging sodas in refrigerators; organizing ingredients in refrigerators; checking expiration dates on food; disposing of expired food or giving expired food to workers who prepare pizzas for immediate use; sorting and/or arranging food according to expiration date; washing dishes; taking out trash; sweeping sidewalks; answering phones; calling-out take-out orders; setting rat traps; cleaning computers; folding boxes; delivering food orders by bicycle or by foot;

distributing flyers; preparing boxes of chicken wings for both delivery and takeout; removing pizzas from ovens for both delivery and takeout; cutting pizzas for both delivery and takeout; putting pizza in boxes for both delivery and takeout and putting other food orders in boxes for both delivery and takeout.

90.     Aside from delivering food, most of the other work Franchise and Manager Defendants have required Plaintiffs to perform is general food preparation, cleaning, and/or maintenance work.

91.     Aside from delivering food, most of the other work Franchise and Manager Defendants have required Plaintiffs to perform has been either unrelated to their tipped duty of delivering food or not solely incidental to that duty.

92.     Plaintiffs have regularly received tips from customers for delivering food.

93.     Plaintiffs have not received tips for any of the other work they perform ("non-tipped work").

94.     Defendants refer to Plaintiffs as "delivery employees" or "delivery team members."

95.     Plaintiffs have spent a substantial amount of their shift time, generally, over twenty percent, performing non-tipped work.

## PLAINTIFFS' HOURS

96.     Franchise and Manager Defendants have assigned Plaintiffs to a particular shift by directing them to arrive at a particular time to begin work.

97.     Franchise and Manager Defendants have not specified the exact time each shift will end, but instead, have required Plaintiffs to continue to work until a Manager Defendant determined each Plaintiff was no longer needed for the day.

98.     As a result, Plaintiffs have often worked over ten hours per day for five or six days a week.

99.     Generally, Plaintiffs work between eight and twelve hours per day.

100.    Each night, at least two Plaintiffs or other similarly situated employees are required to stay after the store closes to customers in order to clean the facility.

101.    Cleaning the facility often requires working until 4 a.m.

## COLLECTIVE ACTION ALLEGATIONS

102.    Plaintiffs bring their FLSA claims on behalf of themselves and all similarly situated persons who have worked for, or currently work for, Defendants at their Domino's Pizza Locations between August 2005 and the date of final judgment in this action, and who, *inter alia*, have delivered pizzas (the "FLSA Collective").

103.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs. Upon information and belief, there are over fifty (50) similarly situated current and former employees of Defendants who have been underpaid in violation of the FLSA and who could have benefited from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. Similarly situated employees have been notified and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

104.    Plaintiffs bring their NYLL claims under Federal Rule of Civil Procedure 23 on behalf of themselves and the same class of persons in the FLSA Collective, consisting of

all persons who have worked for, or currently work for, Defendants at their Domino's Pizza Locations between August 2005 and the date of final judgment in this action, and

- 24 -

who, *inter alia*, have delivered pizzas (the "Rule 23 Class").

105.    Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Corporate Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

106.    The persons in the Rule 23 Class identified above are so numerous that joinder of all members is impracticable.

107.    Upon information and belief, the size of the Rule 23 Class is at least fifty (50) individuals, although the precise number of such persons is unknown, and facts on which the calculation of that number depends are presently within the sole control of the Defendant.

108.    Defendants have acted or refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

109.    There are common questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members of the Class, including, but not limited to, the following:

(a)    whether Defendants have maintained a policy, pattern and/or practice of failing to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Rule 23 Class;

(b)     whether Defendants have maintained a policy, pattern and/or practice of failing to compensate Plaintiffs and the Rule 23 Class for all of the work that they required, suffered, and permitted them to perform;

(c)     whether Defendants have maintained a policy, pattern and/or practice of failing to compensate Plaintiffs and the Rule 23 Class for hours worked in excess of forty hours per work week with appropriate overtime premium wages;

(d)     whether Defendants have engaged in a policy, pattern and/or practice of permitting, encouraging, or forcing Plaintiffs and the Rule 23 Class to work "off the clock" and/or failing to compensate Plaintiffs and the Rule 23 Class for all hours worked in excess of 40 hours per work week;

(e)     whether Defendants have engaged in a policy, pattern and/or practice of unlawfully altering and/or shaving time from the hours that Plaintiffs and the members of the Rule 23 Class worked each work week;

(f)     whether Defendants have maintained a policy, pattern and/or practice of failing to maintain and/or preserve records of the tipped and non-tipped work of Plaintiffs and the Rule 23 Class, along with the corresponding wages received, for the purposes of determining pay, as required to take a tip credit or tip allowance;

(g)     whether Defendants have maintained a policy, pattern and/or practice of paying Plaintiffs and the Rule 23 Class the same tipped wage despite their substantial work unrelated to a tipped occupation;

(h)     whether Defendants have maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class the minimum wage rate, by, for example, taking

illegal deductions from the wages of Plaintiffs and the Rule 23 Class, and/or by paying Plaintiffs and the Rule 23 Class a tipped wage for non-tipped work:

   (i) whether Defendants have maintained a policy, pattern and/or practice of requiring Plaintiffs and the Rule 23 Class to purchase company-issued uniforms, failing to compensate them for the laundering of those uniforms, and taking illegal deductions from their wages for the cost of the uniforms;

   (j) whether Defendants have maintained a policy, pattern and/or practice of requiring Plaintiffs and the Rule 23 Class to purchase and utilize bicycles for making deliveries, whether those bicycles were tools of the trade, and whether Defendants maintained a policy, pattern and/or practice of failing to compensate them for the purchase and/or maintenance of those bicycles;

   (k) whether Defendants have maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

   (l) whether Defendants have maintained a policy, pattern and/or practice of failing to provide the requisite meal periods;

   (m) whether Franchise and Manager Defendants have maintained a policy, pattern and/or practice of retaliating against Plaintiffs and the Rule 23 Class because of activity protected under the NYLL;

   (n) whether Defendants have maintained a policy, pattern and/or practice of failing to inform employees of the requirements of the employment laws by, *inter alia*, failing to post the notices required by the NYLL and/or failing to otherwise inform Plaintiffs of the requirements for an employers' use of the tip credit;

(o)     whether Defendants' above-mentioned policies, patterns and/or practices were instituted willfully; and

(p)     the nature and extent of class-wide injury and the measure of damages for those injuries.

110.    The claims of the Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and the Rule 23 Class work, or have worked, for Defendants doing deliveries and a variety of other tasks in Defendants' Domino's Pizza locations. Plaintiffs and the Rule 23 Class members enjoy the same statutory rights under the NYLL including the right to be paid for all hours worked, to be paid overtime compensation, minimum wage, and spread-of-hours pay. Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL. Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

111.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class. There is no conflict between the Plaintiffs and the Rule 23 Class.

112.    A class action is superior to other available methods for the fair and efficient adjudication of this action. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violation of the NYLL as well as their common and uniform policies, practices, and procedures. A class action is a particularly superior method of adjudication in the context of wage and hour litigation where, as here, individual Plaintiffs lack the financial resources to conduct a thorough analysis of Defendants' payroll and compensation practices and to vigorously prosecute a lawsuit in federal court against a corporate defendant. Although the relative damages suffered by individual Rule 23 Class members are not

- 28 -

*de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

113.    Plaintiffs have retained counsel competent and experienced in complex class actions and in labor and employment litigation.

## COLLECTIVE AND CLASSWIDE FACTUAL ALLEGATIONS

114.    Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

115.    At all times during their employment, Plaintiffs and the members of the Rule 23 Class and the FLSA Collective (collectively "Class Members") were Defendants' "employees" as defined in Section 3(e)(1) of the FLSA. 29 U.S.C. § 203(e)(1), and under NYLL § 651(5), and Defendants were "employers" within the meaning of Section 3(d) of the Act. 29 U.S.C. § 203(d). and NYLL §§ 2(7), 190(2), 651(6).

116.    Class Members were paid at hourly rates.

117.    Upon information and belief, all of the work that Class Members performed was assigned, required, and/or permitted by Franchise and Manager Defendants. and all Defendants were aware of all of the work that Class Members performed.

118.    Upon information and belief, Defendants' conduct has been widespread, repeated, and willful, and has caused significant damages to Class Members.

## Altered Records Resulting in Unpaid Hours and Unpaid Overtime Pay

119.    The FLSA and the NYLL require employers to pay at least the statutory minimum wage rate for every hour worked by an employee. 29 U.S.C. § 206; NYLL § 652.

120.    The FLSA and the NYLL require employers to pay time-and-a-half of the regular rate for each hour worked over forty hours per week. 29 U.S.C. § 207(a): 29 C.F.R. § 778.109: 12 N.Y.C.R.R. §§ 142-2.2,146-1.4.

121.    The NYLL requires employers to pay the promised wage for each hour worked by an employee. NYLL § 190. *et seq.*

122.    Each of Defendants' Domino's Pizza locations is open to the public from 10 a.m. to 2 a.m.

123.    Plaintiffs and similarly situated employees have worked as many as 60 hours per week.

124.    Defendants use a computerized system for tracking hours worked.

125.    Plaintiffs and similarly situated employees "clocked-in" and a Manager "clocked-out" Plaintiffs and similarly situated employees, using the computerized system for tracking hours.

126.    Defendants generate computerized records to reflect hours worked per day for each employee.

127.    Upon information and belief, through the computerized record-keeping system. Corporate Domino's Defendants knew or should have known of the work and hours of Plaintiffs and similarly situated employees.

128.    Upon information and belief, Defendants' records have not accurately reflected all time Plaintiffs and similarly situated employees work.

129.    Upon information and belief. Franchise and Manager Defendants have routinely altered the time records reflecting the hours of work of Plaintiffs and similarly situated employees.

130.    Upon information and belief, Franchise and Manager Defendants have relied on these omissions and alterations to pay Plaintiffs and similarly situated employees lower wages, less or no overtime pay, and in some cases, fail to pay altogether for the hours worked.

131.    At times, Plaintiffs have noticed that although they clocked in at a specific time, later in the shift, the "time-in" entry reflected on the computer or a print-out generated by the computer, was different from the time they clocked in.

132.    At times, Plaintiffs have noticed that the hours reflected on their paystubs do not reflect the actual hours worked in the corresponding time period.

133.    A sample of Defendants' time records from August 2007 to June 2008, provided by Defendants to the New York State Department of Labor, reflects irregular clock-in and clock-out times that do not correspond to the hours Plaintiffs and similarly situated employees worked during that time period.

134.    Upon information and belief, Corporate Domino's Defendants knew or should have known of the unlawful policies, patterns and/or practices, including the time shaving, and had the power to stop them, but did not do so.

135.    Defendants' policy, pattern and/or practice of refusing and/or failing to record all of the time that Plaintiffs and similarly situated employees worked and shaving time from time records was a violation of the FLSA and the NYLL.

**Off-the-Clock Work Resulting in Unpaid Hours and Unpaid Overtime Pay**

136.    Defendants have regularly required some Plaintiffs and similarly situated employees to continue working after a Manager had clocked them out for the day.

137.    Often, Plaintiffs and similarly situated employees who worked the late shift have been clocked out by management but have been directed to continue working.

138.    On a regular basis, Plaintiffs and similarly situated employees assigned to the late shift, during which they were required to clean the store, have performed as many as two hours of cleaning work, after a Manager had clocked them out.

139.    Plaintiffs and similarly situated employees have sometimes returned to the store after doing a delivery to find that a Manager had already clocked them out.

140.    Plaintiffs and similarly situated employees have sometimes been required to wait for a Manager to "cash out," that is, to turn in and reconcile the money they received from customers for deliveries, after a Manager had clocked them out.

141.    As a result of Defendants' practices, on a regular basis, Plaintiffs and similarly situated employees have performed work for which Franchise Defendants did not pay them.

142.    At times, Plaintiffs and similarly situated employees received only tips from customers for certain hours worked, and at other times, nothing at all.

143.    Upon information and belief, Corporate Domino's Defendants knew or should have known of the unlawful policies, patterns and/or practices, including off-the-clock work, and had the power to stop the work and/or violations, but did not do so.

144.    Defendants' policy, pattern and/or practice of requiring Plaintiffs and similarly situated employees to work "off-the-clock" was a violation of the FLSA and the NYLL.

**Illegal Use of Tip Credit**

145.    The FLSA allows an employer to pay tipped employees less than the minimum wage rate and take a tip credit when an employee works in a tipped occupation if, among other requirements, the employer keeps records of the "[h]ours worked each workday in any occupation in which the employee does not receive tips, and total daily or weekly straight-time payment made by the employer for such hours; [and the] [h]ours worked each workday in

occupations in which the employee receives tips, and total daily or weekly straight-time earnings for such hours." 29 U.S.C. § 203(m) and (t); 29 C.F.R. § 516.28; 29 C.F.R. §§ 531.50-531.60.

146.    The NYLL allows employers to take a "tip allowance" and pay an employee less than the minimum wage rate under particular circumstances, including when "(i) the particular occupation in which the employee is engaged is one in which tips have customarily and usually constituted a part of the employee's remuneration; (ii) substantial evidence is provided that the employee received in tips at least the amount of the allowance claimed . . . ; and (iii) the allowance claimed by the employer is recorded on a weekly basis as a separate item in the wage record," among other requirements.  12 N.Y.C.R.R. §§ 142-2.5(b)(1), 146-2.1.

147.    Both the FLSA and the NYLL also require employers to notify employees of their intent to apply a tip credit and post a notice conspicuously explaining the employment laws' requirements.  29 U.S.C. § 203(m); 29 C.F.R. § 516.4; 12 N.Y.C.R.R. § 142-2.8, 146-1.3, 2.2, 2.4.

148.    By paying a reduced rate, a "tipped wage," for all hours paid, Franchise Defendants have paid Plaintiffs and similarly situated employees less than the full minimum wage rate for the hours for which Defendants paid them.

149.    Plaintiffs and similarly situated employees are not properly considered "tipped employees" because Defendants have failed to follow the necessary prerequisites to benefit from the tip credit, *inter alia*, Defendants have failed to maintain and/or preserve accurate records of the hours Plaintiffs and similarly situated employees perform tipped work and/or non-tipped work, along with the corresponding wages received, for the purposes of determining pay.  *E.g.*, 29 U.S.C. § 203(m).

- 33 -

150.   In addition, Plaintiffs and similarly situated employees are not properly considered "tipped employees" because Franchise Defendants require them to spend a substantial amount of time, in excess of twenty percent, doing work unrelated and/or not solely incidental to a tipped occupation. Franchise Defendants improperly pay Plaintiffs and similarly situated employees the tipped wage for all hours for which Defendants pay them. *E.g.*, 29 C.F.R. § 531.56(e); U.S. Department of Labor, Field Operations Handbook, Chapter 30, Section 30d00(e); 12 N.Y.C.R.R. § 146-2.9 ("On any day that a service employee … works at a non-tipped occupation (a) for two hours or more or (b) for more than twenty percent (20%) of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day), eff. Jan. 1, 2011.

151.   Franchise Defendants have paid Plaintiffs and similarly situated employees as if the tip credit were applicable to all of the hours for which Defendants have paid them.

152.   Currently, Franchise Defendants pay Plaintiffs and similarly situated employees $5.65 per hour for the hours for which they are paid.

153.   Generally, Franchise Defendants paid Plaintiffs and similarly situated employees approximately $4.00 per hour in 2005, $4.40 per hour in 2006, $4.60 per hour in 2007, and $4.65 per hour in 2008 and 2009, for the hours for which they were paid.

154.   Franchise Defendants have paid Plaintiffs and similarly situated employees the same hourly pay, a "tipped wage," regardless of the kind of work they performed in any given hour and regardless of whether they received any tips in any given hour.

155.   Upon information and belief, Corporate Domino's Defendants know or should know that Plaintiffs and similarly situated employees are paid as "tipped employees" because of their access to Franchise Defendants' record-keeping systems. Furthermore Corporate Domino's

Defendants know or should know that Plaintiffs and similarly situated employees are performing significant non-tipped work because of Defendants' ability to monitor delivery times and payroll records.

156.    Upon information and belief, while Defendants' computerized time-tracking system should record the hours Plaintiffs and similarly situated employees perform tipped work and the hours they work all together, the Melton and Manager Defendants have not used those records for the purposes of determining applicable wage rates.  The Melton and Manager Defendants have failed to follow federal and state regulations that require, in order to allow an employer to take a tip credit or tip allowance, maintenance and/or preservation of accurate records of the hours Plaintiffs and similarly situated employees perform tipped work and/or non-tipped work, along with the corresponding wages received.  Instead, they have been requiring Plaintiffs and similarly situated employees to sign inaccurate records that understate the time they have spent performing work other than deliveries.

157.    Furthermore, at least until this lawsuit was filed, Defendants did not provide Plaintiffs and similarly situated employees with notice of Defendants' use of the tip credit.

158.    Upon information and belief, until this lawsuit was filed, Defendants did not post the notices required by the FLSA and NYLL and/or did not otherwise informed Plaintiffs and similarly situated employees of the requirements of the tip credit.

159.    Defendants have not informed Plaintiffs and similarly situated employees about the tip credit, or the employment laws generally, in Spanish or other languages spoken by the employees, even though other rules and guidelines for the workplace are posted in Spanish.

160. Upon information and belief, Corporate Domino's Defendants know or should know of the unlawful policies, patterns and/or practices, including improper use of the tip credit, and have the power to stop them, but have not done so.

161. Defendants' policy, pattern and/or practice of failing to inform Plaintiffs and similarly situated employees of the requirements of for employers' use of the tip credit is a violation of the FLSA and NYLL.

162. Defendants' policy, pattern and/or practice of paying Plaintiffs and similarly situated employees a tipped wage despite their substantial work unrelated to a tipped occupation and failing to maintain and/or preserve accurate records of the hours Plaintiffs perform tipped work and/or non-tipped work, along with the corresponding wages received, for the purposes of determining pay, is a violation of the requirements of the FLSA and the NYLL.

**Illegal Deductions and Kick-Backs - Uniforms**

163. Under certain circumstances, the FLSA and the NYLL prohibit employers from requiring employees to purchase the tools of the trade or give any money back to an employer, such as a "kick-back." 29 C.F.R. § 531.35; NYLL § 198-b.

164. Under the FLSA, deductions for tools of the trade must not bring an employee's wage below the minimum wage rate, and if taken, the amount of such deductions must be included for the purpose of calculating the employee's overtime rate. 29 C.F.R. § 531.36-37.

165. The NYLL prohibits employers from making any deductions from any employee's wages except for those permitted by law, prohibits "kick-backs," and also specifies that "the minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by an employer." NYLL §§ 193, 198-b; 12 N.Y.C.R.R. §§ 142-2.10, 146-2.7.

166.   The NYLL requires an employer to reimburse an employee for purchase of a required uniform, and pay a specified amount to reimburse the employee for cleaning the uniform. 12 N.Y.C.R.R. §§ 142.2.22, 142-2.5(c), 146-1.7, 146-1.8.

167.   The FLSA specifies that costs related to purchase and cleaning of a "uniform" cannot be credited toward the minimum wage rate. 29 C.F.R. §§ 531.3(d)(2); 531.32(c).

168.   Defendants have required Plaintiffs and similarly situated employees to wear a Domino's shirt, black pants, Domino's hat, and/or Domino's jacket, and to carry a Domino's bag.

169.   Plaintiffs and similarly situated employees have not worn these articles of clothing as part of their ordinary wardrobe.

170.   The clothing items the Defendants have required Plaintiffs and similarly situated employees to wear constituted a "required uniform" within the meaning of New York State labor regulations, 12 N.Y.C.R.R. §§ 142.2.22, 146-3.10, and also constituted a "uniform" for the purpose of federal law, 29 C.F.R. §§ 531.3(d)(2); 531.32(c).

171.   Plaintiffs and similarly situated employees have usually purchased these clothing items and have usually borne the costs of cleaning these clothing items.

172.   Upon information and belief, Corporate Domino's Defendants knew or should have known of the unlawful policies, patterns and/or practices, including the illegal deductions related to uniforms, and had the power to stop them, but did not do so.

173.   Defendants' policy, pattern and/or practice of requiring that Plaintiffs and similarly situated employees bear the costs of uniform laundering and charging Plaintiffs and similarly situated employees for the purchase of uniforms, which brings Plaintiffs' and similarly

situated employees' wages below the minimum wage rate, is a violation of the FLSA and the NYLL.

## Illegal Deductions and Kick-Backs - Bicycles

174.   Defendants have required Plaintiffs and similarly situated employees to obtain or use their own bicycles in making deliveries for Defendants.

175.   Until this lawsuit was filed, Plaintiffs and similarly situated employees bore all costs associated with the purchase and maintenance of the bicycles.

176.   Plaintiffs and similarly situated employees generally leave the bicycles at the Domino's Pizza location in which they work and do not use the bicycles for personal use.

177.   The bicycles used by Plaintiffs and similarly situated employees are tools of the trade that are specifically required for the performance of their duties.

178.   Upon information and belief, Corporate Domino's Defendants knew or should have known of the unlawful policies, patterns and/or practices, including the illegal deductions related to tools of the trade, and had the power to stop them, but did not do so.

179.   Defendants' policy, pattern and/or practice of requiring that Plaintiffs and similarly situated employees bear the cost of bicycle purchase and maintenance, which brings Plaintiffs' and similarly situated employees' wages below the minimum wage rate, is a violation of the FLSA and the NYLL.

## No Spread-of-Hours Pay

180.   The NYLL requires that employers pay an extra hour's pay at the minimum wage rate if an employee's shift extends more than ten hours between start and finish.  12 N.Y.C.R.R. §§ 142-2.4, 2.18, 146-1.6.

181.    Plaintiffs and similarly situated employees regularly worked an interval over ten hours a day between start and finish.

182.    Franchise Defendants did not pay an additional hour at the minimum wage rate when Plaintiffs and similarly situated employees work an interval over ten hours a day.

183.    Upon information and belief, Corporate Domino's Defendants knew or should have known of the unlawful policies, patterns and/or practices, including failure to pay spread-of-hours pay, and had the power to stop them, but did not do so.

184.    Defendants' policy, pattern and/or practice of failing to pay spread-of-hours pay is a violation of the NYLL.

**Defendants Do Not Provide Statutorily-Required Breaks**

185.    The NYLL requires that employers provide: a noonday meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noonday meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five minute (45) meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p.m. and 6 a.m.  NYLL § 162.

186.    Defendants have maintained a policy, pattern and/or practice of denying Plaintiffs and similarly situated employees time off for meals in violation of NYLL § 162.

187.    Instead of receiving set break and meal times, usually Plaintiffs and similarly situated employees have only been able to take a short rest between deliveries and when no other work is required.  Franchise Defendants required Plaintiffs and similarly situated employees to return to work if there are deliveries to be made, or other work required.

188.    Upon information and belief, Corporate Domino's Defendants knew or should have known of the unlawful policies, patterns and/or practices, including the failure to provide required breaks, and had the power to stop them, but did not do so.

189.    Defendants' policy, pattern and/or practice of routinely denying Plaintiffs and similarly situated employees the right to take the statutorily required meal and rest breaks is a violation of the NYLL.

**Retaliation**

190.    Both the FLSA and the NYLL prohibit employers from discriminating, or taking other adverse actions, against an employee because he or she has engaged in activity protected under those statutes such as making a complaint to the New York State Department of Labor about employment law violations. 29 U.S.C. § 215; NYLL § 215.

191.    Several Plaintiffs engaged in protected activity under the FLSA and/or the NYLL by registering verbal complaints about Defendants' violations of the FLSA and/or the NYLL with supervisory employees and/or the New York State Department of Labor.

192.    Upon information and belief, Franchise and Manager Defendants maintained an unlawful policy, pattern and/or practice of retaliating against Plaintiffs who engaged in protected activity, by selectively reducing schedules and/or terminating and/or constructively discharging those Plaintiffs involved in protected activity.

193.    Plaintiff Carlos Rodriguez Herrera and Juan Hernandez Zavala discussed Defendants' wage-and-hour practices with a supervisory employee at various times throughout their employment, registered verbal complaints about those practices, and insisted on changes in Defendants' practices.

194.     Franchise and Manager Defendants constructively discharged Carlos Rodriguez Herrera in February 2007, shortly after a dispute with a supervisory employee about not receiving pay for hours he had worked.

195.     In or around 2007, shortly after a conversation with a supervisory employee about not receiving pay for hours he had worked, Franchise and Manager Defendants reduced Juan Hernandez Zavala's scheduled hours for about two weeks.

196.     Defendants later terminated Juan Hernandez Zavala in February 2010, shortly after a dispute with a supervisory employee about receiving a tipped wage for all hours worked despite being required to do substantial non-tipped work.

197.     In or around mid-2008, Plaintiff Gil Santiago Cano spoke to a New York State Department of Labor investigator when the investigator visited the Defendants' 200 E. 89th Street Domino's Pizza location.

198.     Shortly thereafter, Franchise and Manager Defendants significantly reduced Plaintiff Gil Santiago Cano's scheduled hours.

199.     In or around Fall 2009, Plaintiff Omar Hernandez Zavala complained to a supervisory employee when he was directed to work after having been clocked-out.

200.     Shortly thereafter, Franchise and Manager Defendants reduced Plaintiff Omar Hernandez Zavala's scheduled hours.

201.     In or around July 2010, Franchise and Manager Defendants terminated Omar Hernandez Zavala after a dispute with a supervisory employee about taking a short break of less than five minutes to eat a meal.

202.    Termination, constructive discharge, and selective reduction of hours because of complaints to an employer and/or to the New York State Department of Labor violate the FLSA and/or the NYLL prohibition on retaliation.

203.    Franchise and Manager Defendants' policy, pattern and/or practice of retaliating against Plaintiffs who engaged in protected activity is a violation of the FLSA and/or the NYLL.

## EACH PLAINTIFF'S EXPERIENCE OF DEFENDANTS' VIOLATIONS

### Gil Santiago Cano

204.    At all relevant times, Gil Santiago Cano ("Cano"), frequently worked more than forty hours per week, but was not paid for all hours he worked each week and was not paid overtime pay or the minimum wage rate as state and federal law require.

205.    Cano regularly spent over twenty percent of each shift performing non-tipped work but was always paid less than the full minimum wage rate for those hours for which he was paid.

206.    Cano paid for parts of his uniform, usually paid for laundering, and paid for all costs of purchase and maintenance of his bicycle.

207.    At times, Cano worked an interval of over ten hours a day and did not receive spread-of-hours pay.

208.    Cano was not provided with regular meal breaks and on those occasions when he was able to take a short rest between deliveries and when no other work was required, Defendants required him to return to work if there were deliveries to be made, or other work required.

**Hector Hernandez Zavala**

209.    At all relevant times, Hector Hernandez Zavala ("H. Zavala") frequently worked more than forty hours per week, but was not paid for all hours he worked each week and was not paid overtime pay or the minimum wage rate as state and federal law require.

210.    H. Zavala regularly spent over twenty percent of each shift performing non-tipped work but was always paid less than the full minimum wage rate for those hours for which he was paid.

211.    H. Zavala paid for parts of his uniform, usually paid for laundering, and paid for all costs of purchase and maintenance of his bicycle.

212.    At times, H. Zavala worked an interval of over ten hours a day and did not receive spread-of-hours pay.

213.    H. Zavala was not provided with regular meal breaks and on those occasions when he was able to take a short rest between deliveries and when no other work was required, Defendants required him to return to work if there were deliveries to be made, or other work required.

**Juan Hernandez Zavala**

214.    At all relevant times, Juan Hernandez Zavala ("J. Zavala") frequently worked more than forty hours per week, but was not paid for all hours he worked each week and was not paid overtime pay or the minimum wage rate as state and federal law require.

215.    J. Zavala regularly spent over twenty percent of each shift performing non-tipped work but was always paid less than the full minimum wage rate for those hours for which he was paid.

216.   J. Zavala paid for parts of his uniform, usually paid for laundering, and paid for all costs of purchase and maintenance of his bicycle.

217.   At times, J. Zavala worked an interval of over ten hours a day and did not receive spread-of-hours pay.

218.   J. Zavala was not provided with regular meal breaks and on those occasions when he was able to take a short rest between deliveries and when no other work was required, Defendants required him to return to work if there were deliveries to be made, or other work required.

**Omar Hernandez Zavala**

219.   At all relevant times, Omar Hernandez Zavala ("O. Zavala") frequently worked more than forty hours per week, but was not paid for all hours he worked each week and was not paid overtime pay or the minimum wage rate as state and federal law require.

220.   O. Zavala regularly spent over twenty percent of each shift performing non-tipped work but was always paid less than the full minimum wage rate for those hours for which he was paid.

221.   O. Zavala paid for parts of his uniform, usually paid for laundering, and paid for all costs of purchase and maintenance of his bicycle.

222.   At times, O. Zavala worked an interval of over ten hours a day and did not receive spread-of-hours pay.

223.   O. Zavala was not provided with regular meal breaks and on those occasions when he was able to take a short rest between deliveries and when no other work was required, Defendants required him to return to work if there were deliveries to be made, or other work required.

**Aristeo Basurto**

224.    At all relevant times, Aristeo Basurto ("Basurto") frequently worked more than forty hours per week, but was not paid for all hours he worked each week and was not paid overtime pay or minimum wage rate as state and federal law require.

225.    Basurto regularly spent over twenty percent of each shift performing non-tipped work but was always paid less than the full minimum wage rate for those hours for which he was paid.

226.    Basurto paid for parts of his uniform, usually paid for laundering, and paid for all costs of purchase and maintenance of his bicycle.

227.    At times, Basurto worked an interval of over ten hours a day and did not receive spread-of-hours pay.

228.    Basurto was not provided with regular meal breaks and on those occasions when he was able to take a short rest between deliveries and when no other work was required. Defendants required him to return to work if there were deliveries to be made, or other work required.

**Carlos Rodriguez Herrera**

229.    At all relevant times, Carlos Rodriguez Herrera ("Herrera") frequently worked more than forty hours per week, but was not paid for all hours he worked each week and was not paid overtime pay or the minimum wage rate as state and federal law require.

230.    Herrera regularly spent over twenty percent of each shift performing non-tipped work but was always paid less than the full minimum wage rate for those hours for which he was paid.

231.   Herrera paid for parts of his uniform, usually paid for laundering, and paid for all costs of purchase and maintenance of his bicycle.

232.   Herrera worked an interval of over ten hours a day and did not receive spread-of-hours pay.

233.   Herrera was not provided with regular meal breaks and on those occasions when he was able to take a short rest between deliveries and when no other work was required. Defendants required him to return to work if there were deliveries to be made, or other work required.

**Leonardo Juarez**

234.   At all relevant times, Leonardo Juarez ("Juarez") frequently worked more than forty hours per week, but was not paid for all hours he worked each week and was not paid overtime pay or the minimum wage rate as state and federal law require.

235.   Juarez regularly spent over twenty percent of each shift performing non-tipped work but was always paid less than the full minimum wage rate for those hours for which he was paid.

236.   Juarez paid for parts of his uniform, usually paid for laundering, and paid for all costs of purchase and maintenance of his bicycle.

237.   Juarez worked an interval of over ten hours a day and did not receive spread-of-hours pay.

238.   Juarez was not provided with regular meal breaks and on those occasions when he was able to take a short rest between deliveries and when no other work was required. Defendants required him to return to work if there were deliveries to be made, or other work required.

**Saul Isidro**

239.    At all relevant times. Saul Isidro ("Isidro") frequently worked more than forty hours per week, but was not paid for all hours he worked each week and was not paid overtime pay or the minimum wage rate as state and federal law require.

240.    Isidro regularly spent over twenty percent of each shift performing non-tipped work but was always paid less than the full minimum wage rate for those hours for which he was paid.

241.    Isidro paid for parts of his uniform, usually paid for laundering, and paid for all costs of purchase and maintenance of his bicycle.

242.    Isidro worked an interval of over ten hours a day and did not receive spread-of-hours pay.

243.    Isidro was not provided with regular meal breaks and on those occasions when he was able to take a short rest between deliveries and when no other work was required. Defendants required him to return to work if there were deliveries to be made. or other work required.

**Aboubacar Gouem**

244.    At all relevant times. Aboubacar Gouem ("Gouem") frequently worked more than forty hours per week. but was not paid for all hours he worked each week and was not paid overtime pay or the minimum wage rate as state and federal law require.

245.    Gouem regularly spent over twenty percent of each shift performing non-tipped work but was always paid less than the full minimum wage rate for those hours for which he was paid.

246.    Gouem paid for parts of his uniform, usually paid for laundering, and paid for all costs of purchase and maintenance of his bicycle.

247.    Gouem worked an interval of over ten hours a day and did not receive spread-of-hours pay.

248.    Gouem was not provided with regular meal breaks and on those occasions when he was able to take a short rest between deliveries and when no other work was required, Defendants required him to return to work if there were deliveries to be made. or other work required.

**Anatole Yameogo**

249.    At all relevant times, Anatole Yameogo ("Yameogo") frequently worked more than forty hours per week, but was not paid for all hours he worked each week and was not paid overtime pay or the minimum wage rate as state and federal law require.

250.    Yameogo regularly spent over twenty percent of each shift performing non-tipped work but was always paid less than the full minimum wage rate for those hours for which he was paid.

251.    Yameogo paid for parts of his uniform, usually paid for laundering. and paid for all costs of purchase and maintenance of his bicycle.

252.    Yameogo worked an interval of over ten hours a day and did not receive spread-of-hours pay.

253.    Yameogo was not provided with regular meal breaks and on those occasions when he was able to take a short rest between deliveries and when no other work was required. Defendants required him to return to work if there were deliveries to be made. or other work required.

- 48 -

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:

### VIOLATION OF FLSA – MINIMUM WAGE
### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE FLSA COLLECTIVE AGAINST ALL DEFENDANTS)

254.    Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

255.    The FLSA provides that employers engaged in commerce shall pay employees the applicable minimum hourly wage.  29 U.S.C § 206(a).

256.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employee or employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).

257.    Defendants' failure to pay Plaintiffs and the FLSA Collective the minimum wage rate violated the FLSA.

258.    The FLSA requires employers to maintain adequate and accurate written records of the actual hours worked and the true wages earned by employees.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.28.

259.    Defendants willfully failed to maintain adequate and accurate written records.

260.    The FLSA and supporting regulations requires employers to notify employees of the employment laws' requirements.  29 C.F.R. § 516.4.

261.    Defendants willfully failed to notify Plaintiffs and the Class Members of the requirements of the employment laws.

262.    Defendants' failure to pay Plaintiffs and the FLSA Collective the minimum wage rate was willful.

## SECOND CLAIM FOR RELIEF:

### VIOLATION OF NYLL – MINIMUM WAGE
### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE RULE 23 CLASS AGAINST ALL DEFENDANTS)

263.    Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

264.    Pursuant to NYLL §§ 198.1-a and 663, an employer who fails to pay the minimum wage rate as required by the Minimum Wage Act shall be liable, in addition to the amount of any under-payments, for liquidated damages equal to twenty-five percent of the total of such under-payments found to be due the employee.

265.    Defendants' failure to pay Plaintiffs and the Rule 23 Class the minimum wage rate violated the NYLL.

266.    Defendants' failure to pay Plaintiffs and the Rule 23 Class the minimum wage rate was not in good faith.

## THIRD CLAIM FOR RELIEF:

### VIOLATION OF FLSA – OVERTIME PAY
### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE FLSA COLLECTIVE AGAINST ALL DEFENDANTS )

267.    Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

268.    The FLSA provides that no covered employer shall permit  a covered employee to work longer than forty (40) hours each workweek unless such employee receives compensation for each hour worked in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed.  29 U.S.C § 207(a).

269.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employee or employees affected in the amount of their unpaid

overtime compensation, and in an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

270.   Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

271.   The FLSA requires employers to maintain adequate and accurate written records of the actual hours worked and the true wages earned by employees. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.28.

272.   Defendants willfully failed to maintain adequate and accurate written records.

273.   The FLSA and supporting regulations requires employers to notify employees of the employment laws' requirements. 29 C.F.R. § 516.4.

274.   Defendants willfully failed to notify Plaintiffs and the Class Members of the requirements of the employment laws.

275.   Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay was willful.

### FOURTH CLAIM FOR RELIEF:

### VIOLATION OF NYLL – OVERTIME PAY
### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE RULE 23 CLASS AGAINST ALL DEFENDANTS)

276.   Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

277.   Pursuant to NYLL §§ 198.1-a and 663, an employer who fails to pay overtime required by the Minimum Wage Act shall be liable, in addition to the amount of any under-payments, for liquidated damages equal to twenty-five percent of the total of such under-payments found to be due the employee. 12 N.Y.C.R.R. § 142-2.2.

278.    Defendants' failure to pay Plaintiffs and the Rule 23 Class their overtime pay violated the NYLL.

279.    Defendants' failure to pay Plaintiffs and the Rule 23 Class their overtime pay was not in good faith.

### FIFTH CLAIM FOR RELIEF:

### VIOLATION OF NYLL – UNPAID WAGES
### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE RULE 23 CLASS AGAINST ALL DEFENDANTS)

280.    Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

281.    The NYLL requires employers to pay promised wages for every hour worked. NYLL §§ 190(1), *et seq.*

282.    Defendants failed to pay Plaintiffs and the Rule 23 Class the promised wage for every hour worked.

283.    Defendants' failure to pay Plaintiffs and the Rule 23 Class the promised wage for every hour worked was not in good faith.

### SIXTH CLAIM FOR RELIEF:

### VIOLATION OF NYLL - ILLEGAL DEDUCTIONS
### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE RULE 23 CLASS AGAINST ALL DEFENDANTS)

284.    Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

285.    The NYLL prohibits deductions other than those allowed by law.  NYLL §§ 193 and 198-b.

286.    In violation of the NYLL, Defendants improperly made deductions from the wages of Plaintiffs and the Rule 23 Class for the cost of uniforms, uniform laundering, purchase

and cost of bicycle maintenance. and/or other expenses they incurred as employees in carrying out assigned duties.

287.     Defendants' violation of taking improper deductions was not in good faith.

### SEVENTH CLAIM FOR RELIEF:

### VIOLATION OF NYLL – UNPAID UNIFORM LAUNDERING ALLOWANCE (BROUGHT ON BEHALF OF PLAINTIFFS AND THE RULE 23 CLASS AGAINST ALL DEFENDANTS)

288.     Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

289.     The NYLL requires employers to compensate employees. beyond that specified by the minimum wage. for laundering and maintenance of required uniforms in violation of New York State labor regulations.  12 N.Y.C.R.R. §§ 142.2.22, 142-2.5(c), 146-1.7.

290.     Defendants failed to pay Plaintiffs and the Rule 23 Class additional pay. beyond that specified by the minimum wage. for laundering and maintenance of required uniforms.

291.     Defendants' failure to pay Plaintiffs and the Rule 23 Class additional pay. beyond that specified by the minimum wage. for laundering and maintenance of required uniforms in violation of New York State labor regulations was not in good faith.

### EIGHTH CLAIM FOR RELIEF:

### VIOLATION OF NYLL - SPREAD-OF-HOURS PAY (BROUGHT ON BEHALF OF PLAINTIFFS AND THE RULE 23 CLASS AGAINST ALL DEFENDANTS)

292.     Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

293.     The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190. *et seq.*, and §§ 650.

*et seq.*, and New York State Department of Labor regulations, 12 N.Y.C.R.R. §§ 142-2.4, 2.18, 146-1.6.

294.    Defendants failed to pay Plaintiffs and the Rule 23 Class an extra hour's pay at the minimum wage rate for every day that Plaintiffs and the Rule 23 Class worked an interval in excess of ten hours.

295.    Defendants' failure to pay Plaintiffs and the Rule 23 Class spread-of-hours pay was not in good faith.

### NINTH CLAIM FOR RELIEF

### <u>VIOLATION OF NYLL: FAILURE TO PROVIDE MEAL PERIODS</u><br>(BROUGHT ON BEHALF OF PLAINTIFFS AND THE RULE 23 CLASS AGAINST<br>ALL DEFENDANTS)

296.    Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

297.    The NYLL requires that employers provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 am., to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p.m. and 6 a.m. NYLL § 162.

298.    Defendants failed to provide the meal periods required by NYLL § 162.

299.    Defendants' failure to provide the meal periods require by NYLL § 162 was not in good faith.

## TENTH CLAIM FOR RELIEF:

## VIOLATION OF NYLL: MAINTENANCE OF EMPLOYMENT RECORDS
### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE RULE 23 CLASS AGAINST ALL DEFENDANTS)

300.    Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

301.    The NYLL requires employers to maintain adequate and accurate written records of the actual hours worked and the true wages earned by employees. NYLL § 195(4): 12 N.Y.C.R.R. §§ 142-2.6. 146-2.1.

302.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of the actual hours worked and true wages earned by Plaintiffs and the Rule 23 Class.

303.    Defendants' failure to maintain adequate and accurate written records of the actual hours worked and true wages earned by Plaintiffs and the Rule 23 Class was not in good faith.

## ELEVENTH CLAIM FOR RELIEF:

## VIOLATION OF NYLL: FAILURE TO PROVIDE NOTICE AND INFORMATION ABOUT EMPLOYMENT LAWS
### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE RULE 23 CLASS AGAINST ALL DEFENDANTS)

304.    Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

305.    The NYLL and supporting regulations require employers to notify employees of their intent to apply a tip credit and post a notice conspicuously explaining the employment laws' requirements. 12 N.Y.C.R.R. §§ 142-2.8. 146-2.4.

306.     Defendants have not posted the notices required by the NYLL informing Plaintiffs of the requirements of the employment laws, and/or have not otherwise informed Plaintiffs about the employment laws' requirements to Plaintiffs or the Rule 23 Class.

307.     Defendants' failure to post the required notices and/or otherwise inform Plaintiffs and the Rule 23 Class of the requirements of the employment laws was not in good faith.

### TWELFTH CLAIM FOR RELIEF:

### VIOLATION OF FLSA - RETALIATION
### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE FLSA COLLECTIVE AGAINST FRANCHISE AND MANAGER DEFENDANTS)

308.     Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

309.     The FLSA prohibits employers from discriminating, or taking other adverse actions, against an employee because he or she has engaged in protected activity such as making a complaint to the New York State Department of Labor about employment law violations.  29 U.S.C. § 215.

310.     Some of the Plaintiffs have engaged in protected activity as defined by 29 U.S.C. § 215(a)(3).

311.     Defendants have engaged in a policy, pattern and/or practice of retaliating against Plaintiffs who engaged in protected activity by selectively reducing schedules and/or terminating and/or constructively discharging those Plaintiffs involved in protected activity, in violation of 29 U.S.C. § 215.

312.     Defendants' policy, pattern and/or practice of retaliation adversely affects the FLSA Collective by chilling other employees' participation in protected activity.

313.     Defendants' policy, pattern and/or practice of retaliation was willful.

## THIRTEENTH CLAIM FOR RELIEF:

### VIOLATION OF NYLL - RETALIATION
### (BROUGHT ON BEHALF OF PLAINTIFFS AND THE RULE 23 CLASS AGAINST FRANCHISE AND MANAGER DEFENDANTS)

314.    Plaintiffs repeat and reallege all allegations in all preceding paragraphs as if fully set forth herein.

315.    The NYLL prohibits employers from discriminating, or taking other adverse actions, against an employee because he or she has engaged in protected activity such as making a complaint to an employer, or other entity, about employment law violations. NYLL § 215.

316.    Some of the Plaintiffs have engaged in protected activity as defined by NYLL § 215.

317.    Franchise and Manager Defendants have engaged in a policy, pattern and/or practice of retaliating against Plaintiffs who engaged in protected activity by selectively reducing schedules and/or terminating and/or constructively discharging those Plaintiffs involved in protected activity, in violation of NYLL § 215.

318.    Franchise and Manager Defendants' policy, pattern and/or practice of retaliation adversely affects the Rule 23 Class by chilling other employees' participation in protected activity.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, the FLSA Collective and the Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

(a)    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b)    Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

- 57 -

(c)     Certification of this case as a collective action pursuant to FLSA;

(d)     Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful;

(e)     An Order requiring Defendants to pay all unpaid minimum wages, overtime wages, all unauthorized deductions and kick-backs and an equal amount as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.* and the United States Department of Labor regulations;

(f)     An Order requiring Defendants to pay unpaid wages, minimum wages, overtime pay, spread-of-hours pay, pay illegally deducted, compensation for uniform laundering, all other unauthorized deductions and kick-backs and liquidated damages in the amount of twenty-five percent under NYLL §§ 190, *et seq.*, 650, *et seq.*, and the supporting New York State Department of Labor regulations;

(g)     An Order pursuant to the NYLL requiring Defendants to immediately comply with the employment laws, including providing meal breaks; paying appropriate minimum wage rates and overtime pay, spread-of-hours pay, compensation for uniform purchase and laundering, compensation for bicycle maintenance; maintaining the required records of, *inter alia*, the hours, pay, deductions, time worked doing deliveries, time worked doing other work; and informing employees of the requirements of the employment law.

(h)     Legal and equitable relief as a remedy for Franchise and Manager Defendants' retaliation against Plaintiffs including but not limited to declaratory relief declaring Franchise and Manager Defendants actions as retaliatory; prohibiting future retaliation; payment of lost wages resulting from retaliatory termination, constructive discharge, or reduction of hours; other compensatory or punitive damages.

(i)     Pre-judgment interest; and post-judgment interest as allowed by law;

- 58 -

(j)     Attorneys' fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

(k)     The costs and disbursements of this action;

(l)     Such other relief as this Court shall deem just and proper.

Dated:     New York, New York
           December 5, 2012

Respectfully submitted,

THE LEGAL AID SOCIETY

By _____

Steven R. Banks, Attorney in Charge
Adriene L. Holder, Attorney in Charge, Civil Practice
Karen Cacace, Supervising Attorney
Richard E. Blum, of counsel
Hollis V. Pfitsch, of counsel
Employment Law Unit
199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3465 (phone)
(KCacace@legal-aid.org)
(RBlum@legal-aid.org)
(HVPfitsch@legal-aid.org)

*Attorneys for Plaintiffs*

SHEARMAN & STERLING LLP
Adam S. Hakki
John A. Nathanson
Darren Ishmael
Mojoyin Onijala
599 Lexington Avenue
New York, New York 10022-6069
(212) 848-4000 (phone)
(adam.hakki@shearman.com)

*Of Counsel*